FILED
United States Court of Appeals
Tenth Circuit

July 17, 2012

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

BANCFIRST, Limited Guardian of the
Estate of M.J.H., a minor, by and through
Wes Knight, Vice President and Trust
Officer,

        Plaintiff-Appellant,

v.

FORD MOTOR COMPANY, a Delaware
corporation,

        Defendant-Appellee.

No. 11-6179
(D.C. No. 5:09-CV-00076-L)
(W.D. Okla.)

ORDER AND JUDGMENT[*]

Before **TYMKOVICH**, **BALDOCK**, and **GORSUCH**, Circuit Judges.

One of the things they teach in driver education classes is that if your car

begins to spin out you should turn the steering wheel in the direction of the skid.

This counter-intuitive reaction allows the wheels to regain traction and arrest the

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R App. P. 32.1 and 10th Cir. R. 32.1.

slide.  Everyone agrees that Brandon Moore could not possibly have avoided the sad collision at issue at the center of this case unless he followed this maxim.  But Mr. Moore admits he didn't and, as a result, he hit and injured a child, known as "M.J.H.," who darted on her bicycle through a stop sign and into Mr. Moore's oncoming truck.

For its part, BancFirst (acting as M.J.H.'s guardian) sought in this lawsuit to prove Mr. Moore *did* counter-steer.  It did so in order to place responsibility for the accident at the door step of Ford Motor Company and the allegedly defective brakes it placed on Mr. Moore's truck.  As part of its suit against Ford, BancFirst offered expert testimony from William Medcalf who opined that Mr. Moore did counter-steer, and that if Ford had equipped the truck with a better brake system the accident never would have happened.  The district court, however, concluded that Mr. Medcalf did not meet the standards for admissible expert testimony set forth in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).  And because BancFirst lacked any other evidence suggesting Ford's braking system was the cause of the accident, the district court granted summary judgment for Ford, and it is all of this BancFirst naturally now appeals.[1]

---

[1]  This is the second time this case is before us on appeal.  *See BancFirst ex rel. Estate of M.J.H. v. Ford Motor Co.*, 422 F. App'x. 663, 664-66 (10th Cir. 2011).  In the first appeal we expressly reserved the question whether Mr. Medcalf's testimony was admissible under *Daubert* in order to allow the district court to address it in the first instance, as that court now has.

Expert testimony is only admissible, of course, if it is "the product of reliable principles and methods" and "appl[ies] the principles and methods reliably to the facts of the case." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc) (quoting Fed. R. Evid. 702)); *see also Daubert*, 509 U.S. at 589-90. It belongs to the district court in the first instance to make this reliability determination, and we review its conclusions only for abuse of discretion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138-39 (1997). So it is that we will not reverse unless we can say the district court "exceeded the bounds of permissible choice in the circumstances" at hand. *Nacchio*, 555 F.3d at 1241.

We cannot say so much in the circumstances at issue here. The trouble for BancFirst is that the district court found "simply too great an analytical gap between the data and the opinion proffered." *Joiner*, 522 U.S. at 146. And our own review of the opinion and facts leads us to the same conclusion. While Mr. Medcalf opined that Mr. Moore counter-steered to the right into the skid, the data just isn't there to support that conclusion. Mr. Moore himself conceded that when he saw M.J.H. dart into the intersection he didn't counter-steer to the right but instead hit the brakes and turned hard to the left, only to have the truck spin counterclockwise and causing its right rear corner to hit the child. And one can easily understand why Mr. Moore might have done just as he said he did: steering right into the skid would have required Mr. Moore to turn the wheel *toward* the child, making an already

counter-intuitive maneuver all the more so given his desperate wish to avoid hitting her.

Attempting to bridge the gap between his opinion and the data in the face of Mr. Moore's unhelpful admission, Mr. Medcalf points to police photographs showing that the wheels of Mr. Moore's truck were turned to the right after the accident. But, as the district court noted, there is no indication *when* the wheels were turned to the right, before or after the accident. Mr. Medcalf himself acknowledges, as well, that there is no evidence in the record that might allow him to figure this out.

Trying yet another path, Mr. Medcalf notes that driver education courses usually teach new drivers to counter-steer out of a slide. But true as that may be, there is no evidence in this case Mr. Moore was so taught, or that drivers tend to follow this training in the heat of the moment when doing so requires them to turn, seemingly paradoxically, toward a person they are seeking to avoid. *See Nacchio*, 555 F.3d at 1258 (expert relying on his own experience "must explain how that experience leads to the conclusion reached . . . and how that experience is reliably applied to the facts.") (quotation omitted). A similar problem recurs with Mr. Medcalf's reference to a study about driver reaction times. Mr. Medcalf says this study shows Mr. Moore theoretically had enough time to make the counter-steer. But however that may be, it still doesn't indicate that he *did* counter-steer, or that drivers tend to do so even when it requires them to turn back in the direction of a person with whom they are about to collide.

In light of the gap between opinion and data, we find ourselves in no position to call the district court's exclusion of Mr. Medcalf an abuse of discretion. "[A]n expert's scientific testimony must be based on scientific knowledge, which 'implies a grounding in the methods and procedures of science' based on actual knowledge, not 'subjective belief or unsupported speculation.'" *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) (quoting *Daubert*, 509 U.S. at 590). In this case, the district court concluded that speculation is all that exists to support Mr. Medcalf's belief that Mr. Moore attempted to counter-steer. We find ourselves unable to disagree.

Because we uphold Mr. Medcalf's exclusion for lack of fit between facts and theory on his assertion that Mr. Moore counter-steered, we have no reason to address Ford's alternative arguments for excluding his testimony. And because without Mr. Medcalf's testimony BancFirst lacked any other way to prove Ford was the cause of the injuries M.J.H. sustained, the district court appropriately entered judgment in favor of Ford. To be sure, BancFirst now argues that the district court should have allowed it to present a new expert witness in Mr. Medcalf's stead. But BancFirst never *asked* the district court for leave to present a new expert witness, and the bank does not even attempt to suggest (let alone explain how) the district court's failure to provide that chance on its own motion somehow amounted to plain error.

*See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011).

Affirmed.

Entered for the Court


Neil M. Gorsuch
Circuit Judge