FILED
United States Court of Appeals
Tenth Circuit

January 8, 2013

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

RONALD R. NATION, VICKY L.
NATION; RONALD A. NATION;
FRANK D. JACOBSEN,

       Plaintiffs-Appellants/
Cross-Appellees,

v.

FIRST TENNESSEE BANK
NATIONAL ASSOCIATION,

       Defendant-Appellee/
Cross-Appellant.

Nos. 11-1352 and 11-1378
(D.C. No. 1:08-CV-02671-PAB-CBS)
(Colorado)

ORDER AND JUDGMENT[*]

Before **HOLMES**, **SEYMOUR**, and **MURPHY**, Circuit Judges.

Plaintiffs appeal the district court's grant of partial summary judgment to

defendant First Tennessee Bank National Association on plaintiffs breach of the

covenant of good faith and fair dealing claim, and defendant appeals the court's

grant of partial summary to plaintiffs on their claim that defendant breached the

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

contract provision requiring defendant to give due consideration to the advice of plaintiffs. Substantially for the reasons stated by the district court in the two orders it entered granting summary judgment, we affirm.

This case arose out of the sale by First Tennessee of a subsidiary it owned, First Horizon Merchant Services, Inc., to Nova Systems, Inc. First Horizon was a credit card merchant processing business which facilitated credit card transactions for numerous retail merchants, including international hotel companies, large universities, and casinos. In January 2006, Nova and First Tennessee entered into a Merchant Asset Purchase Agreement in which Nova agreed to pay $432,700,000 in cash at closing and a "Holdback Amount" of $17,300,000, to be paid contingent on Nova being able to execute agreements "on terms and conditions satisfactory to [Nova] in the exercise of its commercially reasonable judgment" with five of the largest merchants whose agreements had expired, or to maintain business relationships with those clients without "a material adverse change." Purchase Agreement § 4.2, Aplts. App., vol. I at 216-17.

Plaintiffs were all part of First Horizon's senior management group. On the same day the Purchase Agreement was executed, First Tennessee and a group of First Horizon employees, including plaintiffs, entered into an Amended and Restated Special Payment Agreement (SPA), which required First Tennessee to pay the group a percentage of the total purchase price in exchange for which they committed to use their best efforts to help in the transition process. Specifically,

First Tennessee agreed to pay the group 2% of the purchase price if the total turned out to be less than $450,000,000, and 2.5% if the total was between $450 and $455 million. In addition, the SPA provided:

> All decisions regarding the negotiation of terms and conditions of the [Purchase] Agreement and the other Operative Documents to be executed by First Tennessee or [First Horizon] in connection with the Transaction shall be made by the Senior Vice President, Corporate Development of First Tennessee [Milton A. Gutelius, Jr.], together with First Tennessee's third party advisors. In negotiating the Operative Documents, such persons will give due consideration to the advice, counsel and instruction of the group comprised of Nation, Sr., Charles G. Burkett, Larry B. Martin and Marty Mosby.

SPA § 7, Aplts. App., vol. I at 144.

When First Tennessee was paid $432,000,000 at the closing, the employee group was paid 2%, which was $8,654,000. As the district court explained, Nova negotiated written agreements over the next year and a half with four of the five remaining merchants, but the agreements with two of the larger merchants, Caesars and Hilton, were on lesser terms than previously. Aplts. App., vol. II at 566. As of November 2007, no agreement had been reached with Starwood, which constituted $9,480,000 of the Holdback Amount. Nova informed First Tennessee that it was not going to be able to reach an agreement with Starwood on terms satisfactory to Nova because Starwood was requiring pricing at a 60% discount, retroactive to January 1, 2006. Aplts. App., vol. I at 118.

In December 2007, First Tennessee and Nova entered into an Amendment to the Purchase Agreement, whereby Nova was permitted to buy out the Holdback

Amount for $8,500,000. First Tennessee did not consult with plaintiffs before signing the agreement, but it did pay plaintiffs their share of 2% of the buy out amount.

Plaintiffs brought this action contending that First Tennessee violated the terms of the SPA when it agreed to amend the Purchase Agreement without consulting them, and that it violated its duty of good faith and fair dealing by settling the Holdback Amount for less than the full amount specified in the Purchase Agreement. After the parties conducted limited written discovery and no depositions, they filed a Stipulated Motion to Stay Discovery so they could both file motions for summary judgment.

On September 20, 2010, the district court granted partial summary judgment to First Tennessee on plaintiffs' claim that First Tennessee had violated its contractual duty of good faith and fair dealing, holding that plaintiffs had failed to "identify any evidence supporting the conclusion that defendant acted in an 'arbitrary or unreasonable' manner resulting in plaintiffs not receiving the reasonably expected benefit of their bargain." *Id*. at 569. The court held that the Purchase Agreement gave Nova discretion to determine whether the agreements it entered into with the merchants were sufficiently satisfactory to warrant payment of the Holdback Amount, and that there was no evidence First Tennessee acted in bad faith in relation to its obligations to plaintiffs when it negotiated a lump sum payment arrangement to settle the Holdback Amount. The court also held that

-4-

plaintiffs did not have a promissory estoppel claim. But the court denied summary judgment to First Tennessee on plaintiffs' claim that it violated the SPA when it failed to consult with plaintiffs before entering into the Amendment.

On June 30, 2011, the court granted summary judgment to plaintiffs on their due consideration claim. It determined, however, that they failed to show actual damages. It awarded plaintiffs $1.00 in nominal damages.

We review a district court's summary judgment decision *de novo*, "viewing the evidence in the light most favorable to the non-moving party." *Archuleta v. Wal-Mart Stores, Inc.*, 543 F.3d 1226, 1231 (10th Cir. 2008). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(a)). To overcome a properly supported motion for summary judgment the non-moving party "must present affirmative evidence . . . from which a jury might return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 357 (1986).

We have reviewed the record on appeal and plaintiffs' arguments and we find no reason to disagree with the district court's conclusions. In making this determination, we have not considered arguments made by plaintiffs for the first time on appeal. Plaintiffs' new legal theory regarding interpretation of the Purchase Agreement was forfeited when they failed to raise it in district court. *See Richison v. Ernest Group, Inc.*, 634 F.3d 1123, 1127-28 (10th Cir. 2011).

Plaintiffs offer no explanation for not previously raising the interpretation of the Purchase Agreement they argue to us, and they make no effort to meet the plain error standard. *See id.* at 1128. They merely contend we should address the theory because we can. We decline this invitation to reverse the district court on a ground never presented to it. *See McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 998 (10th Cir. 2002).

With respect to the cross-appeal, we are not persuaded the district court erred when it held that First Tennessee violated the "due consideration" requirement of the SPA. As the court said, "although the provision did not require the defendant to obey Mr. Nation's advice, it did require the defendant to consider such advice." Aplts. App., vol. I at 675.

We AFFIRM.

ENTERED FOR THE COURT

Stephanie K. Seymour
Circuit Judge