**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 1, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DEERE & COMPANY,

      Plaintiff,

v.

LARRY CABELKA; GOLDEN
TRIANGLE FARMS LLC,

      Defendants Cross Claimants
      Cross Defendants -
      Appellants,

v.

STANLEY McCUISTON; STEVE
McCUISTON,

      Defendants Cross Defendants
      Cross Claimants - Appellees,

and

PHILIP McCUISTON,

      Defendant.

No. 14-6208
(D.C. No. 5:13-CV-00511-HE)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

---

[*] The parties do not request oral argument, and the Court has determined that oral argument would not materially aid our consideration of the appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). Thus, we have decided the appeal based on the briefs.

Our order and judgment does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel.

Before **MATHESON**, **BACHARACH**, and **MORITZ**, Circuit Judges.
_____

This appeal involves competing claims growing out of sales of agricultural equipment. The primary claimants are Golden Triangle Farms LLC, its principal (Mr. Larry Cabelka), and a father and son (Stanley and Steve McCuiston). The McCuistons prevailed at trial, and Golden Triangle and Mr. Cabelka appeal. In the appeal, Golden Triangle and Mr. Cabelka (1) present new arguments, which we cannot entertain because of forfeiture, waiver, and mootness, and (2) challenge the judgment based on their view that the district court should have adopted their version of events. We affirm.

## I. The Transfers of the Combine

This appeal focuses primarily on a series of transactions involving a combine. The initial transaction involved a sale from Deere & Company to Mr. Donnie Bergkamp. Mr. Bergkamp authorized Mr. Larry Cabelka, of Golden Triangle, to resell or rent the combine. Mr. Cabelka ultimately agreed to give some interest in the combine to Stanley and Steve McCuiston. Mr. Cabelka claims the transfer involved a rental; the McCuistons insist there was a sale.



If there was a sale, however, the combine would have come with a lien in favor of Deere. *See* Okla. Stat. tit. 12A, § 1-9-315(a)(1) (2011).

The lien was triggered when Mr. Bergkamp failed to pay Deere, which in turn sued Golden Triangle, Mr. Cabelka, and the McCuistons (everyone that had possessed the combine). Golden Triangle and Mr. Cabelka filed cross-claims against the McCuistons for conversion and breach of contract, and the McCuistons filed their own claims against

Golden Triangle for breach of warranty and against Mr. Cabelka for constructive fraud and negligent misrepresentation. Deere and the McCuistons settled, with the McCuistons paying Deere $65,000.[1]

But the settlement did not terminate the cross-claims, which involve disputes on

- whether the McCuistons had rented or purchased the combine, and

- whether the McCuistons had paid the purchase price for the combine.

The McCuistons say they bought the combine unaware there was a lien in favor of Deere. Golden Triangle and Mr. Cabelka insist the McCuistons were fully aware of the Deere lien and had simply rented the combine because they did not have enough money to buy it. The district court sided with the McCuistons, awarding them $65,000,[2] the amount they had agreed to pay Deere for the combine. Golden Triangle and Mr. Cabelka challenge the award to the McCuistons.

## II.    The Sale of the Header

The parties agree that the McCuistons promised to purchase a header from Golden Triangle. The dispute is whether the McCuistons ever paid the purchase price. The district court found that the McCuistons had paid for

---

[1]    Deere also voluntarily dismissed its claims against Golden Triangle and Mr. Cabelka. Thus, Deere is no longer a party in the case.

[2]    The court based Golden Triangle's liability on the warranty claim and Mr. Cabelka's liability on the claim of constructive fraud.

4

the header by using a $30,000 offset. Golden Triangle and Mr. Cabelka disagree with this finding.

## III. Golden Triangle/Cabelka's New Appellate Arguments

On appeal, Golden Triangle and Mr. Cabelka make two new appellate arguments:

1. The McCuistons' theory is based on an oral contract, which is precluded by the statute of frauds.

2. The McCuistons' "unclean hands" would preclude equitable relief.

These arguments were not presented in district court. As a result, these arguments were considered "forfeited." *See EEOC v. Beverage Distributors Co.*, 780 F.3d 1018, 1023 n.4 (10th Cir. 2015). Forfeited arguments are ordinarily reviewable under the plain-error standard. *See Richison v. Ernest Group, Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011). But Golden Triangle and Mr. Cabelka have not made an argument under the plain-error standard. As a result, we decline to consider the new appellate arguments. *See id.* at 1130-31.

## IV. Denial of Jury Trial

Mr. Cabelka and Golden Triangle also contend that they should have had a jury trial. We reject this contention.

5

After the deadline for a jury demand, Mr. Cabelka asked for a jury trial.[3] But he later submitted a final pretrial report with the McCuistons, designating the case for a nonjury trial. The district court approved the final pretrial report. With the parties' joint designation of the case for a nonjury trial, the court conducted the trial without a jury.

By designating the case for a nonjury trial, Mr. Cabelka waived his request for a jury trial. *See FMC Corp. v. Aero Indus., Inc.*, 998 F.2d 842, 845 (10th Cir. 1993) (holding that a party waived his right to a jury trial by signing the proposed pretrial order designating the case for a nonjury trial); *see also Lampkin v. Int'l Union*, 154 F.3d 1136, 1147 (10th Cir. 1998) ("A party who stipulates in the pretrial order to submission of an issue to the court has waived the right to a jury determination of the issue."). In light of this waiver, we reject the argument involving failure to conduct a jury trial.

## V.    Attorney Fees

Golden Triangle challenged the award of attorney fees to the McCuistons on their warranty claim. But after making this challenge, the parties stipulated to an attorney fee award in favor of the McCuistons. Thus, Golden Triangle's challenge to the fee award is moot.

---

[3]    Golden Triangle never requested a jury trial in district court.

6

## VI.   The Weight of the Evidence

Golden Triangle and Mr. Cabelka also argue that the district court's factual findings were not supported by the weight of the evidence. We disagree.

In addressing this argument, we apply the clear-error standard of review. Fed. R. Civ. P. 52(a)(6). A finding is clearly erroneous only if we have a definite, firm conviction that the district court made a factual mistake. *Anderson v. Bessemer City*, 470 U.S. 564, 573-74 (1985). We are particularly deferential to the district court when its findings are based on the witnesses' credibility. *Id.* at 575.

Golden Triangle and Mr. Cabelka argue that the district court should have found that

- Golden Triangle had simply rented the combine and

- the McCuistons had failed to pay the purchase price for either the combine or the header.

For these arguments, Golden Triangle and Mr. Cabelka rely largely on their own account. But Stanley McCuiston testified that

- he had negotiated the purchases,

- he and his son had bought the combine and header at the negotiated prices, and

- they had paid the purchase prices for both the combine and the header.

7

The district court could assess the evidentiary conflicts and make its own credibility assessments.[4]

Golden Triangle and Mr. Cabelka say Mr. McCuiston claimed two different offsets for the same action: (1) $40,000 for the combine based on help in harvesting, and (2) $30,000 for the header for the same help in harvesting. *See* Appellant's Br. at 7. But there is nothing inherently problematic with the two setoffs. The court could reasonably conclude that the McCuistons had earned a total offset of $70,000, which would have justified both setoffs.

The record would have provided evidentiary support for that conclusion. An example exists in the questioning of Mr. Stanley McCuiston. When he was asked about a cutting log for the 2010 harvesting season, he pointed to a notation of $89,000, stating that this figure represented the approximate amount that he was owed for his work. *See* Appellee's App. at 156-57. This sum would have allowed the McCuistons to both setoffs.

Mr. Cabelka and Golden Triangle also contend that Stanley McCuiston's testimony was inconsistent with the testimony of his son

---

[4]    Mr. Cabelka and Golden Triangle also contend that the ruling conflicts with the documentary evidence. But the validity and importance of the documentation was disputed. The district court could reasonably interpret the documents based on the testimony. Thus, our focus returns to the district court's credibility determinations.

(Steve). But the district court could reasonably view their testimony as consistent on three critical points:

1. In 2011, Golden Triangle still owed the McCuistons about $89,000 for help in harvesting.

2. This debt was the source of the setoffs used for purchasing both the combine and the header.

3. The setoffs left a balance of $35,000, which was paid by check.

Mr. Cabelka and Golden Triangle argue that Steve McCuiston's testimony was inconsistent with Stanley's; at one point, Steve indicated that the parties had negotiated the $40,000 setoff for the combine after the McCuistons paid a $35,000 check, while Stanley indicated that the setoff for the combine was negotiated before the $35,000 payment. For three reasons, the court could reasonably downplay the significance of this alleged inconsistency.

First, Stanley and Steve McCuiston agreed on the amounts of the setoffs and what they had been based on.

Second, Steve did not say at trial that the setoff had been negotiated after payment of the $35,000. For this argument, Mr. Cabelka and Golden Triangle rely on a deposition excerpt. *See id.* at 195. Like Stanley, Steve testified at trial that they had agreed to pay $35,000 by *subtracting the $40,000 debt* from the $95,000 purchase price. This account made it clear that the payment had been made after negotiation of the total price. *See id.* at 185.

9

Third, the McCuistons' version is bolstered by common sense: The $35,000 payment for the combine was pegged to what remained of the $95,000 purchase price (after subtracting $20,000 for the down payment and $40,000 for the setoff). In these circumstances, the court could reasonably infer that the setoff was negotiated first.

In the end, we do not have a definite, firm conviction that the district court erred in finding for the McCuistons and against Mr. Cabelka and Golden Triangle on their respective cross-claims.

## VII. Disposition

We affirm.

Entered for the Court

Robert E. Bacharach
Circuit Judge