FILED
United States Court of Appeals
Tenth Circuit

July 14, 2025

Christopher M. Wolpert
Clerk of Court

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

TIFFANY GRAYS,

    Plaintiff - Appellant,

v.

RICO MUNN; ELIZABETH FRANCIS;
MICHAEL W. SCHREINER; CARI
ROBERTS; ZACHERY SAMPLES;
DAVID WALLER; NICHOLAS
KLOBERDANZ; GREGORY CAZZELL;
BRANDON EYRE; THE CITY AND
COUNTY OF AURORA, COLORADO,

    Defendants - Appellees.

No. 24-1253
(D.C. No. 1:22-CV-00926-SKC-KAS)
(D. Colo.)

_____

## ORDER AND JUDGMENT[*]
_____

Before **MATHESON**, **BACHARACH**, and **CARSON**, Circuit Judges.
_____

Tiffany Grays, appearing pro se, appeals the district court's order dismissing

her civil rights lawsuit with prejudice.  We have jurisdiction under 28 U.S.C. § 1291,

and we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.  BACKGROUND & PROCEDURAL HISTORY

In May 2018, Grays's daughter was a student in the Aurora (Colorado) Public Schools system (APS).  That month, school administrators suspended the daughter.  Grays challenged the suspension and the administration barred her from coming onto school property, claiming she had been disrespectful to school staff.  Before the month was out, however, APS rescinded the daughter's suspension and the restriction placed on Grays.

Three months later (August 24, 2018), APS issued a "No Trespass Directive" against Grays.  R. vol. 3 at 165.  APS claimed that, since the May incident, Grays had been sending harassing and threatening e-mails to district personnel and had behaved uncivilly during a visit to an APS office.  The No Trespass Directive forbade Grays from entering APS property without written permission from one of APS's attorneys.

From the issuance of the No Trespass Directive through February 2019, Grays was cited several times for trespassing on APS property.  All of those cases were dismissed save one, which led to a jury trial and conviction in Aurora Municipal Court in October 2019.

In February 2021, Grays asked for permission to personally address APS's Board of Education at one of its public meetings.  The Board said no but Grays attended anyway.  Upon request from Board members, Aurora police officers Zachery Samples and David Waller arrested Grays for trespassing.  The case was dismissed three months later.

2

On April 15, 2022, Grays filed this lawsuit. She named as defendants various APS officials and employees, along with APS itself, two of APS's outside attorneys, the City of Aurora, and Officers Samples and Waller. She claimed they had conspired to create and enforce the No Trespass Directive, and those actions violated her rights under 42 U.S.C. §§ 1981, 1983, 1985, and 2000a, as well as under Colorado law.

Four days after filing the federal lawsuit, Grays filed a pro se lawsuit in Colorado state court against APS. Grays claimed the February 2021 incident, where she was arrested for attending an APS Board meeting, amounted to race or sex discrimination in violation of Colorado public-accommodations laws. APS moved to dismiss for failure to state a claim, Grays responded, and the state court ruled in favor of APS. Specifically, it found that Grays "was not denied in-person access to the [Board] meeting because of her race, sex, or any other factor, but rather the sole reason she was denied entry into the building was a No Trespass Directive in effect at the time." R. vol. 9 at 61. "Thus," the court concluded, "she has not stated a plausible claim of discrimination." *Id.*

Meanwhile, the various defendants in Grays's federal lawsuit moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The district court granted their motions and dismissed Grays's federal claims with prejudice.[1] We discuss the district court's reasoning below as it becomes relevant to Grays's appellate arguments.

---

[1] The district court dismissed Grays's state-law claims without prejudice, and Grays does not challenge that here.

3

## II.    ANALYSIS

The district court noted that Grays's complaint was "prolix, discursive, and disjointed, and each of the listed claims is in fact comprised of numerous subclaims asserting various violations of law." R. vol. 11 at 94. But "affording the [complaint] a liberal construction," the district court said "[Grays's] case can be distilled down to" a challenge to the No Trespass Directive and a challenge to her treatment at the February 2021 Board meeting. *Id.* at 95.[2]

Grays does not dispute the district court's construction of her complaint. We therefore take it as given and move on to her specific challenges to the district court's decision to dismiss her claims. "We review de novo the dismissal of a complaint under Rule 12(b)(6)." *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1274 (10th Cir. 2023).

### A.    Statute of Limitations for Challenges to the No Trespass Directive

The district court concluded: (1) all of Grays's federal statutory causes of action (42 U.S.C. §§ 1981, 1983, 1985, and 2000a) have a two-year statute of limitations; (2) Grays's claims regarding the No Trespass Directive accrued when

---

[2] To be precise, the district court broke the challenge to the No Trespass Directive into two parts: one attacking the May 2018 directive, which APS rescinded before the end of that month; and the other attacking the August 2018 directive, which remains in force. However, nothing that followed in the district court's analysis explained what claims Grays might be bringing based on the defunct May 2018 directive. In this appeal, the parties likewise do not explain how the May 2018 directive might still be relevant. We therefore focus on the No Trespass Directive issued in August 2018. But our analysis also applies to the May 2018 directive.

APS issued the directive in August 2018; (3) equitable tolling was not appropriate; and (4) the continuing violation doctrine did not apply. The court therefore dismissed Grays's claims against the No Trespass Directive as untimely, given she filed her lawsuit in 2022.

In this appeal, Grays challenges the district court's rulings on equitable tolling and the continuing violation doctrine.

### 1. Equitable Tolling

Colorado law governs equitable tolling because Grays's federal causes of action borrow from state law for their statutes of limitation. *See, e.g.*, *Braxton v. Zavaras*, 614 F.3d 1156, 1159 (10th Cir. 2010) ("In a § 1983 action, state law governs issues regarding the statute of limitations and tolling . . . ."). Colorado places the burden on the plaintiff to establish tolling of a statute of limitations. *Garrett v. Arrowhead Improvement Ass'n*, 826 P.2d 850, 855 (Colo. 1992). And although we normally review Rule 12(b)(6) dismissals de novo, *see Clinton*, 63 F.4th at 1274, "[w]e review the district court's refusal to apply equitable tolling for an abuse of discretion," *Braxton*, 614 F.3d at 1159 (internal quotation marks omitted).

Grays argues equitable tolling is appropriate because "Defendant-Appellees' conduct . . . caused warrants, imprisonment, court dates, which required additional time and squandered Plaintiffs limited resources." Aplt. Opening Br. at 14. She further alleges she experienced health challenges during the relevant timeframe.

The Colorado Supreme Court has "repeatedly held that awaiting the result of another case or another legal proceeding is not the type of extraordinary circumstance

necessary to equitably toll the statute of limitations." *Brodeur v. Am. Home Assur. Co.*, 169 P.3d 139, 150 (Colo. 2007) (internal quotation marks omitted). So if Grays means to say she needed to wait for the resolution of her previous trespass cases, Colorado authority prevents us from considering that explanation.

Construing Grays's filings liberally in light of her pro se status, *see Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005), she may mean to say she was not awaiting the results of her trespass cases, but those cases and her health struggles simply occupied her time to the point where she could not pursue this action during the two years after August 2018. The district court, however, took judicial notice of its own records and explained that Grays had filed numerous lawsuits in the District of Colorado during the relevant timeframe, and pursued "abundant motions practice in each." R. vol. 11 at 98.[3] The district court therefore concluded she had the ability to timely pursue this litigation. The court also noted that her allegations about health challenges lacked any details. *Cf. Garrett*, 826 P.2d at 855 ("[T]he exercise of equitable jurisdiction [to toll the statute of limitations] requires an inquiry into the particular circumstances of the case.").

Grays tells us the district court's catalog of her other lawsuits actually proves her point—she was so busy with other legal proceedings and dealing with health challenges that she could not bring this lawsuit in time. But the district court did not abuse its discretion in concluding that her demonstrated ability to pursue litigation

---

[3] Specifically, she filed five lawsuits between August 2018 and February 2020.

and her lack of details about her health struggles showed she did not qualify for equitable tolling.  We therefore will not disturb this finding.

> ## 2.    Continuing Violation

Grays argues the continuing violation doctrine also saves her claims.  The continuing violation doctrine "is triggered by continual unlawful acts, not by continual ill effects from the original violation."  *Hamer v. City of Trinidad*, 924 F.3d 1093, 1099 (10th Cir. 2019) (internal quotation marks omitted).  Grays acknowledges as much and argues the No Trespass Directive amounts to a continual unlawful act because it forever restricts her access to APS properties.  But she cites no authority interpreting the continuing violation doctrine this way and we have found none.  We affirm the district court's conclusion that the continuing violation doctrine does not apply.

* * *

We agree with the district court that the statute of limitations bars Grays's federal claims challenging the No Trespass Directive.

## B.    The February 2021 Arrest

Grays's arrest when she tried to attend the February 2021 Board meeting happened less than two years before she filed this lawsuit, so her claims are timely as to that incident.  As to those claims, the district court found: (1) issue preclusion bars all claims against the APS officials and employees; and (2) qualified immunity bars all claims against the arresting officers (Samples and Waller).  Grays challenges both rulings.

1.    Issue Preclusion

A federal court must give a state-court judgment the same preclusive effect it would have in a subsequent state-court lawsuit.  *See* 28 U.S.C. § 1738.  The issue-preclusion question turns on the effect of Grays's state-court lawsuit against APS, in which the state court ruled that she "was not denied in-person access to the [Board] meeting because of her race, sex, or any other factor, but rather the sole reason she was denied entry into the building was a No Trespass Directive in effect at the time." R. vol. 9 at 61.

Issue preclusion in Colorado has four elements:

> (1) The issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding;
>
> (2) The party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding;
>
> (3) There was a final judgment on the merits in the prior proceeding;
>
> (4) The party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding.

*Michaelson v. Michaelson*, 884 P.2d 695, 700–01 (Colo. 1994).  The district court found the only genuinely contested element was the fourth.  The court concluded Grays had a full and fair opportunity to litigate the issue of APS's motive for preventing her from attending the February 2021 meeting given that: (i) the issue was litigated according to the Colorado Rules of Civil Procedure (which largely mimic their federal counterparts); (ii) Grays in fact participated in the litigation; and

8

(iii) Grays presented the same arguments in state court that she was presenting in federal court.

In this appeal, Grays argues she did not have a full and fair opportunity to litigate the state-court case because she was under severe distress and dealing with health problems and the pandemic at the time. She offers no details and no support in the record for this claim. We therefore see no reason to reverse the district court's ruling on this basis.

Grays also argues issue preclusion was inappropriate because, in state court, she sued Adams-Arapahoe School District 28-J, not APS. This is both incorrect and irrelevant. It is incorrect because Adams-Arapahoe School District 28-J and APS are the same entity, as Grays herself alleged in her complaint. *See* R. vol. 3 at 75, ¶ 21 ("Adams-Arapahoe 28J School District ('Aurora Public Schools' or 'APS') . . . is a governmental entity of public schools."). And it is irrelevant because the party *asserting* issue preclusion (here, APS) need not have been a party to the earlier litigation. *See People v. Allee*, 740 P.2d 1, 5 (Colo. 1987).

Grays next argues preclusion does not apply because she is suing some of the defendants in their individual and official capacities. She offers no authority that this makes a difference for issue preclusion, nor are we aware of any. Again, the question is whether *she* was a party to the earlier litigation (yes), not whether the defendants were parties.

Finally, Grays says defendants' issue preclusion argument is itself precluded because her complaint had already survived the in forma pauperis (IFP) screening

9

process. Grays refers to 28 U.S.C. § 1915(e)(2)(B)(ii), which directs the district court to dismiss a case brought IFP if it "fails to state a claim on which relief may be granted." According to Grays, the fact that the magistrate judge who screened the complaint did *not* dismiss her complaint at the screening phase means the magistrate judge concluded the complaint indeed stated a claim on which relief may be granted. So, Grays says, any argument by a defendant to the contrary must satisfy 28 U.S.C. § 636(b)(1)(A), which states that a magistrate judge's orders on pretrial matters may be reconsidered "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." Thus, because no defendant argued that the magistrate judge's finding that her complaint stated a claim was clearly erroneous or contrary to law, she argues that the district court's decision to entertain the defendants' motions to dismiss violated § 636.[4]

There is no such rule. A magistrate judge's decision to allow a case beyond the screening phase is a preliminary decision made without adversarial briefing. It has no law-of-the-case effect and it is not an order to which a defendant must object if the defendant later seeks dismissal for failure to state a claim.

For all these reasons, we affirm the district court's conclusion that the outcome of the state-court lawsuit precludes Grays from claiming that APS officials or employees intended to discriminate against her based on a protected characteristic when they decided to have her arrested at the February 2021 Board meeting. The

---

[4] If this argument were valid, it would be an argument against granting the defendants' motions to dismiss for any reason, not just issue preclusion.

district court therefore appropriately dismissed her federal causes of action to the extent those claims sought to hold APS, including its officials or employees, liable for discrimination based on the February 2021 incident.

### 2.    Qualified Immunity

The district court concluded that Officers Samples and Waller—the officers who carried out the February 2021 arrest—deserve qualified immunity because APS personnel told them Grays was violating the No Trespass Directive, and the officers therefore had probable cause to arrest her for trespassing. Grays's only response is that the officers' failure to perform any investigation before arresting her is evidence of their racial animus. She cites no authority clearly establishing that the officers had a duty to perform an investigation in a situation like this. *See Doe v. Woodard*, 912 F.3d 1278, 1289 (10th Cir. 2019) ("A motion to dismiss based on qualified immunity imposes the burden on the plaintiff to show both that [1] a constitutional violation occurred and [2] that the constitutional right was clearly established at the time of the alleged violation." (internal quotation marks omitted)). We also see no obvious connection between failure to investigate and racial animus.

Grays has not carried her burden to overcome the officers' assertion of qualified immunity. We therefore uphold the district court's dismissal of all federal claims against Samples and Waller.[5]

---

[5] The district court further ruled that Grays's municipal-liability claim against the City of Aurora failed because it requires a municipal officer or employee to have violated the plaintiff's rights and Grays could never prove as much given that Samples and Waller deserved qualified immunity. Grays does not challenge this

## C.    The Aurora Trespassing Ordinance

Grays's only federal claim that is not time-barred, issue-precluded, or foreclosed by qualified immunity is a claim that the City of Aurora's trespassing ordinance—the law she violated by disobeying the No Trespass Directive—is unconstitutional on its face and as applied to her.  Grays's complaint requested that the court "[c]ondemn [the ordinance] and restore [her] reputation overturning the one conviction of trespass on [her] record and direct Defendant[]s to request the removal from [her] criminal history forthwith."  R. vol. 3 at 112, ¶ 137.

Given the stated intent of this cause of action, the district court concluded that *Heck v. Humphrey*, 512 U.S. 477 (1994), bars the claim.  *Heck* holds that

> to recover damages for [an] allegedly unconstitutional conviction . . . a § 1983 plaintiff must prove that the conviction . . . has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*Id.* at 486–87.  And, at least as to prisoners, *Heck* also applies to non-damages claims, such as a request for "a judicial determination that necessarily implies the unlawfulness of the State's custody."  *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005).

---

ruling and we will not act as her advocate, *see Garrett*, 425 F.3d at 840, so we will not disturb it.  But we note two matters.  First, municipal liability does not *always* require an underlying constitutional violation by a municipal officer or employee. *See Crowson v. Washington Cnty.*, 983 F.3d 1166, 1185–91 (10th Cir. 2020). Second, if a municipal officer or employee deserves qualified immunity because the law is not clearly established, the case may still go forward against the municipality. *See Hinton v. City of Elwood*, 997 F.2d 774, 783 (10th Cir. 1993).

Grays argues *Heck* does not apply to her because she is not a prisoner and cannot bring a habeas action. Grays, however, forfeited this argument by failing to raise it in the district court. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011) ("[I]f the theory simply wasn't raised before the district court, we usually hold it forfeited."). Grays's only arguable response to defendants' *Heck* argument in the district court was a single cryptic sentence, "Heck is the appropriate [sic] case." R. vol. 11 at 22. This sentence appeared without context at the end of a paragraph discussing the district court's alleged inherent power to overturn a wrongful conviction. *See id.*

"If a newly raised legal theory is entitled to appellate review at all . . . it may form a basis for reversal only if the appellant can satisfy the elements of the plain error standard of review." *Richison*, 634 F.3d at 1130 (emphasis omitted). "And the failure to do so—the failure to argue for plain error and its application on appeal—surely marks the end of the road for an argument for reversal not first presented to the district court." *Id.* at 1131. Grays does not argue for plain-error review of her claim that she lacks a habeas remedy and *Heck* therefore does not control. We therefore do not consider the argument.

Finally, Grays argues she satisfied the *Heck* standard because her prior criminal proceedings terminated in her favor. We presume she refers to the dismissed trespassing charges. The dismissed charges, however, do not change the fact that she was convicted on one charge. The district court did not err on this basis.

13

For these reasons, we uphold the district court's dismissal of Grays's constitutional challenge to Aurora's municipal trespassing ordinance.[6]

### D.    Constitutional Challenge to Pro Se Procedures in District Court

Finally, Grays claims the district court's handling of pro se lawsuits, including local rules about case screening and judge assignment, violate pro se litigants' rights to equal protection and due process.  Grays does not point us to where she raised this argument in the district court.  Although we have no duty to do so, we have searched the record ourselves and cannot find it.  She therefore forfeited the argument and we do not address it.  *See Richison*, 634 F.3d at 1128.

## III.    CONCLUSION

We affirm the district court's judgment.

Entered for the Court

Joel M. Carson III
Circuit Judge

---

[6] Grays did not argue in the district court, and she does not argue here, that this claim should survive at least to the extent she seeks an injunction against future application of the ordinance to her activities.  We therefore do not address whether such a claim would be viable.