FILED
United States Court of Appeals
Tenth Circuit

February 19, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

TANYA L. PAIGE,

      Plaintiff-Appellant,

v.

SHAUN DONOVAN, Secretary, United
States Department of Housing and Urban
Development,

      Defendant-Appellee.

No. 12-1014
(D.C. No. 1:09-CV-01811-WJM-CBS)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **ANDERSON**, and **EBEL**, Circuit Judges.

Tanya L. Paige worked for many years for the Department of Housing and

Urban Development (HUD) until her retirement on May 1, 2009. On July 31, 2009,

acting pro se, she filed suit in the United States District Court for the District of

Colorado, alleging racial and religious discrimination under 42 U.S.C. § 2000e-5

(Title VII), and "Unlawful Employment Practices." R. Vol. 1 at 12. Ms. Paige later

---

[*]      After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

amended her complaint to include claims of gender discrimination, retaliation, and constructive discharge under Title VII; a claim of unfair labor practices; and a federal tort claim under 28 U.S.C. § 1346(b)(1) for intentional infliction of emotional distress.[1] HUD moved for summary judgment and for dismissal for failure to exhaust administrative remedies. Ms. Paige retained a lawyer, who responded to HUD's motion. The magistrate judge issued a 44-page report and recommendation to grant HUD's motion, and Ms. Paige's lawyer filed objections. The district court overruled the objections and entered a 22-page order that (1) dismissed without prejudice Ms. Paige's claims for gender discrimination, religious discrimination, constructive discharge, and unfair labor practices because she failed to exhaust her administrative remedies, and (2) granted summary judgment in favor of HUD on her claims for race discrimination (including a hostile-work-environment claim) and retaliation. Ms. Paige, once again acting pro se, appeals from that order. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

Ms. Paige worked as a senior housing specialist in the Quality Assurance Division of HUD. HUD uses a five-tier job performance rating scale. The ratings, in order of worst to best, are "Unacceptable," "Marginally Successful," "Fully Successful," "Highly Successful," and "Outstanding." R. Vol. 1 at 390. Before 2005 Ms. Paige had consistently received above-average annual performance ratings. But

---

[1] Ms. Paige does not appeal from the order dismissing the tort claim.

in February 2006 Ms. Paige was informed that her rating for the 2005 performance year (February 1, 2005, through January 31, 2006) was only "Fully Successful."

In early 2006 there was an opening for the job of branch chief. The person selected to serve as the first acting chief had received an "Outstanding" rating for performance-year 2005. He served until late May. When it came time to select the second acting chief, the director, in conjunction with human-resources personnel, decided to look at the 2005 year-end job performance ratings and "begin with the reviewer staff that had the highest ratings, beginning at the top of the row of the reviewers." *Id*. at 770. The person selected as the second acting chief had an "Outstanding" rating for the 2005 performance year. In September a person with a "Highly Successful" rating was selected to serve as the third acting chief, until a permanent chief was hired in November. The acting chiefs received temporary pay increases.

A midyear progress review in July 2006 rated Ms. Paige "Unacceptable" in two categories and "Marginally Successful" in two others. On August 2 she contacted an Equal Employment Opportunity (EEO) counselor about the progress review. On August 14 she was placed on a 60-day Opportunity to Improve/Performance Improvement Plan (OIP/PIP). In September she was taken off the OIP/PIP because her performance had improved in three of the four deficient categories. On October 4, however, she was placed on a PIP concerning the category in which she had not improved. On October 12 Ms. Paige contacted the EEO

counselor to complain about the October 4 action as retaliation. Despite the lower ratings earlier in the year, in November 2006 Ms. Paige was rated "Fully Successful" for what was essentially the 2006 performance year.

On November 16, 2006, Ms. Paige filed a formal EEO complaint in which she claimed disparate treatment based on her African-American race, citing (1) the July 2006 midyear progress review; (2) the August OIP/PIP; (3) the October PIP; (4) the failure to select her to serve as acting branch chief or on special projects where she could have earned cash awards and better performance ratings; and (5) her exclusion from impromptu staff meetings at co-workers' cubicles and other informal office communications.

In late March 2007 Ms. Paige forwarded two emails to the EEO to supplement her complaint. She characterized one as an offensive email from a supervisor and the other as showing discrimination in awarding religious credit hours. In May 2007 the EEO wrote to Ms. Paige's lawyer that it would accept as an amendment to her claim the allegation that in retaliation for her EEO activity "her supervisor did not process her request for religious credit hours in accordance with [HUD's] Religious Compensatory Time policy." *Id*. at 768. The EEO also agreed to consider the alleged offensive communication "as background evidence in support of [her] pending hostile work environment claim." *Id*. The record does not reveal any response from either Ms. Paige or her lawyer objecting to the EEO's characterization of the claims.

On October 6, 2008, while Ms. Paige's first complaint was pending with the EEO, she contacted an EEO counselor to complain that management was obstructing her efforts to take religious compensatory leave to celebrate Kwanzaa. Although Ms. Paige, a union member, had filed a grievance on the same issue on October 20, she filed a formal EEO complaint on November 1. In a December 22, 2008 decision, the EEO dismissed the complaint under 29 C.F.R. § 1614.107(a)(4) because Ms. Paige had filed a negotiated grievance regarding the same issue. Ms. Paige retired on May 1, 2009.

## II. ANALYSIS

### A. Ms. Paige's Pro Se Briefs

"Pro se parties [are required to] follow the same rules of procedure that govern other litigants." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). "[A]lthough we make some allowances for the pro se plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements, the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Id.* (brackets, citation, and internal quotation marks omitted). Even when viewed through the forgiving lens that we apply to pro se litigants, Ms. Paige's "briefs do not come close to complying with Federal Rule of Appellate Procedure 28." *Id.* For example, Ms. Paige has not complied with Rule 28(e) because her briefs do not contain any references to the

pages of the record. This failure alone would be sufficient to deny appellate review. Nonetheless, we have examined the record, considered the applicable law, and discern no reversible error.

### B. Failure to Exhaust Title VII Claims

In this circuit, "[e]xhaustion of administrative remedies is a jurisdictional prerequisite to suit under Title VII." *Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir. 1996) (internal quotation marks omitted). "[E]ach discrete incident of alleged discrimination or retaliation constitutes its own unlawful employment practice for which administrative remedies must be exhausted." *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) (internal quotation marks omitted).

The magistrate judge concluded that Ms. Paige had failed to exhaust her Title VII claims for gender discrimination, religious discrimination, retaliation by not transferring her to another division, and constructive discharge. In its order the district court noted that Ms. Paige's "only objection [to the magistrate judge's report and recommendation concerning exhaustion] is with respect to constructive retirement." R. Vol. 1 at 1079. Therefore, this is the only Title VII exhaustion issue we will review on appeal. *See Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010) (under the firm-waiver rule, a party's failure to timely object to the proposed findings and recommendations of the magistrate judge "waives appellate review of both factual and legal questions" (internal quotation marks omitted)).

The district court agreed with the magistrate judge that Ms. Paige "has failed to exhaust any claim . . . arising out of or related to her allegedly forced retirement," R. Vol. 1 at 1080, and dismissed the claim without prejudice. "We review the district court's dismissal for lack of subject matter jurisdiction de novo, and the findings of jurisdictional facts for clear error." *McBride v. CITGO Petroleum Corp*., 281 F.3d 1099, 1104-05 (10th Cir. 2002).

Ms. Paige filed two EEO complaints, one in November 2006 (amended in 2007) and another in November 2008. Unsurprisingly, neither complaint mentions a constructive discharge because Ms. Paige did not retire until May 2009. Nor is there any evidence that Ms. Paige filed a complaint with the EEO after she retired in May 2009.

Ms. Paige makes several arguments on appeal to excuse her failure to exhaust. She did not, however, raise any of these arguments in the district court. Because she has not argued for plain-error review in her opening brief on appeal, the arguments are forfeited. *See Richison v. Ernest Grp., Inc*., 634 F.3d 1123, 1131 (10th Cir. 2011) ("[T]he failure to argue for plain error and its application on appeal . . . surely marks the end of the road for an argument for reversal not first presented to the district court."). Moreover, the arguments have no merit.

### C.  Unfair Labor Practices

In her amended complaint Ms. Paige alleged that her supervisors discriminated against her when they denied her request to have "representation during any of the

meeting[s] surrounding the OIP/PIP," R. Vol. 1 at 50, or "during any scheduled meeting with management during the time period of August 14, 2006 through November 1, 2007," *id.* According to Ms. Paige, "[t]his was discriminatory since an employee could be fired if unsuccessful in mitigating the issues," *id.*, and the "policy violated the Weingarten ruling which allows employees to have representation present during any meeting that could have resulted in an adverse action," *id.*[2]

The district court found that Ms. Paige's "[a]mended [c]omplaint does not allege that she has pursued any administrative remedies with respect to her *Weingarten* claim," *id.* at 1081, and dismissed the claim without prejudice for failure to exhaust. Our review discloses no error.

As a federal employee who was also a member of a union, Ms. Paige was entitled, upon request, to have a union representative present at any investigation that she believed could have resulted in disciplinary action. *See* 5 U.S.C. § 7114(a)(2)(B)(i), (ii). Assuming without deciding that the meetings were in fact investigations that could have led to disciplinary action, HUD's alleged refusal to allow her to have a representative present would have been an unfair labor practice, *see id.* § 7116(a)(8), which Ms. Paige was required to raise in the first instance with the Federal Labor Relations Authority (FLRA), *see id.* § 7118(a)(1); *Karahalios v.*

---

[2]    "Weingarten ruling" refers to *NLRB v. J. Weingarten*, *Inc.*, 420 U.S. 251, 262 (1975), in which the Supreme Court recognized "an employee's right [under the National Labor Relations Act] to the presence of a union representative at an investigatory interview in which the risk of discipline reasonably inheres."

*Nat'l Fed'n of Fed. Emps.*, 489 U.S. 527, 532 (1989) ("[U]nfair labor practice complaints are adjudicated by the FLRA, which is authorized to order remedial action appropriate to carry out the purposes of the [Civil Service Reform Act], including an award of backpay against either the agency or the labor organization that has committed the unfair practice. . . . There is no express suggestion in [the Act] that Congress intended to furnish a parallel remedy in a federal district court to enforce [an employee's rights under the Act]."). Because there is no record of such an FLRA claim, dismissal of this claim is mandated.

On appeal Ms. Paige argues that her unfair-labor-practices claim arises under 5 U.S.C. § 7513 or under the union's collective-bargaining agreement with HUD. There is a reference to § 7513 in Ms. Paige's amended complaint, but that statute is irrelevant because the employee rights described in § 7513(b)(1)-(4), including the right to be represented by an attorney or other representative, are provided only for the actions described in 5 U.S.C. § 7512(1)-(5), none of which was taken in this case. And setting aside that Ms. Paige has not cited any authority that would allow her to sue in federal district court for the alleged violation of a collective-bargaining agreement, she never argued such a violation in the district court, and her failure to argue for plain error on appeal means the argument is foreclosed. *See Richison*, 634 F.3d at 1131.

### D. Title VII Claims Resolved on Summary Judgment

#### 1. Standard of Review

"We review a district court's decision granting summary judgment *de novo*, resolving all factual disputes and drawing all reasonable inferences in favor of the non-moving party." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

#### 2. Hostile Work Environment

"To survive summary judgment on a racially hostile work environment claim, a plaintiff must show that under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, *and* (2) the harassment was racial or stemmed from racial animus." *Chavez v. New Mexico*, 397 F.3d 826, 831-32 (10th Cir. 2005) (emphasis added) (internal quotation marks omitted).

The district court found that because Ms. Paige did not show that any of the harassment was racial or stemmed from racial animus, summary judgment was proper. To be sure, "[f]acially neutral abusive conduct can support a finding of . . . animus sufficient to sustain a hostile work environment claim when that conduct is viewed in the context of other, overtly [racially] discriminatory conduct." *O'Shea v.*

- 10 -

*Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1097 (10th Cir. 1999).  But in this case there is no evidence with a racial component.

### 3.  Racial Discrimination

"A plaintiff proves a violation of Title VII either by direct evidence of discrimination or by following the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).  "[The] *McDonnell Douglas* . . .three-step analysis requires the plaintiff first prove a prima facie case of discrimination."  *Id*.  To establish a prima facie case, Ms. Paige "must establish that (1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she qualified for the position at issue, and (4) she was treated less favorably than others not in the protected class."  *Id*.  If Ms. Paige makes out a prima facie case, "[t]he burden then shifts to [HUD] to produce a legitimate, non-discriminatory reason for the adverse employment action."  *Id*.  If HUD meets that burden, "the burden then shifts back to [Ms. Paige] to show that [her] protected status was a determinative factor in the employment decision or that the employer's explanation is pretext."  *Id*.

Ms. Paige based her racial-discrimination claim on (1) the lower annual performance ratings she received beginning in 2004; (2) the 2006 midyear progress review; (3) her placement on the OIP/PIP in August 2006; (4) her placement on PIP in October 2006; and (5) the failure to select her as acting branch chief.  It is undisputed that Ms. Paige first contacted an EEO counselor on August 2, 2006.

- 11 -

Thus, we agree with the district court that we cannot consider Ms. Paige's 2004, 2005, and 2006 annual performance reviews (including the "Fully Satisfactory" rating she received on February 28, 2006) because she did not contact an EEO counselor within 45 days of receiving these reviews, as required by 29 C.F.R. § 1614.105(a)(1). We also agree that Ms. Paige's failure to contact an EEO counselor within 45 days of the appointment of the first two acting branch chiefs in February and May 2006 means these events cannot be considered.

We turn now to the midterm 2006 progress review, Ms. Paige's placements on OIP/PIP and PIP, and the failure to select her as an acting branch chief in September 2006. As to the midyear progress review and the OIP/PIP, the district court concluded that these were not adverse employment actions, and Ms. Paige therefore failed to establish her prima facie case. The court, however, found that Ms. Paige established a prima facie case concerning the failure to select her as an acting branch chief.

We agree that the midyear progress review and placement on OIP/PIP (as well as the placement on PIP) were not adverse employment actions for substantially the reasons explained by the district court. But even assuming that they were adverse actions, these claims fail because HUD presented evidence of legitimate, nondiscriminatory reasons for its actions, and Ms. Paige failed to come forward with any evidence of pretext. And the lack of evidence of pretext also defeats Ms. Paige's claim for the failure to select her as an acting branch chief.

- 12 -

To show pretext, Ms. Paige "must produce evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [HUD's] proffered legitimate reasons for its action[s] that a reasonable factfinder could rationally find them unworthy of credence." *Argo*, 452 F.3d at 1203 (internal quotation marks omitted). But there is simply no evidence that the midyear progress review or the placements on OIP/PIP and PIP were based on anything other than Ms. Paige's substandard job performance. Nor is there any evidence that the explanation for the director's decision on how to select an acting branch manager was pretextual.

### 4. Retaliation

"Title VII . . . makes it unlawful for an employer to retaliate against an employee because she has opposed [an unlawful employment practice.]" *Khalik*, 671 F.3d at 1192 (internal quotation marks omitted). A plaintiff can prove retaliation "by relying on the three-part *McDonnell Douglas* framework." *Id*. To establish a prima facie case, Ms. Paige must show (1) that she engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action. *See id*. at 1193.

Ms. Paige argued in the district court that she was not selected as an acting branch chief in retaliation for contacting the EEO in August 2006. The court found that Ms. Paige met her prima facie burden, and HUD presented evidence of

- 13 -

legitimate, nondiscriminatory reasons for its actions. The court, however, found no evidence of pretext. We agree with the district court that "the evidence of pretext is even weaker with Plaintiff's retaliation claim than . . . with respect to Plaintiff's discrimination claim." R. Vol. 1 at 1096. Ms. Paige received her "Fully Successful" rating in February 2006, nearly six months before she first contacted the EEO on August 2, 2006. And the director implemented the plan for choosing an acting director (desk location and performance ratings) in May 2006, two months before Ms. Paige contacted the EEO. As the court explained, "There is no evidence that this selection process, or the desk location criterion upon which it was based was manipulated in any way after [the director] learned of Plaintiff's EEO activity." *Id.*

The judgment of the district court is affirmed. Ms. Paige's motion to proceed *in forma pauperis* is denied.

Entered for the Court

Harris L Hartz
Circuit Judge