FILED
United States Court of Appeals
Tenth Circuit

February 20, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MICHAEL DON NEELY,

    Defendant - Appellant.

No. 17-8087
(D.C. Nos. 1:16-CV-00079-ABJ and
1:12-CR-00174-ABJ-1)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **McHUGH**, and **MORITZ**, Circuit Judges.
_____

Michael Neely appeals the district court's order denying his 28 U.S.C. § 2255

motion. For the reasons discussed below, we affirm.

**Background**

In early 2013, Neely pleaded guilty to one count of being a felon in possession

of a firearm and ammunition. *See* 18 U.S.C. § 922(g)(1). The Presentence

Investigation Report (PSR) recommended imposing an enhanced sentence under the

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment isn't binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

Armed Career Criminal Act (ACCA) of 1984, 18 U.S.C. § 924(e). In relevant part, the PSR based this recommendation on four of Neely's prior convictions: (1) a 1980 Oregon conviction for delivering marijuana; (2) a 1983 Tennessee conviction for burglary; (3) a 1990 Oregon conviction for first-degree robbery; and (4) a 2007 Nevada conviction for attempting to commit battery resulting in substantial bodily harm. *See* § 924(e)(1) (establishing mandatory minimum sentence for offenders who violate § 922(g) and have at least "three previous convictions . . . for a violent felony or a serious drug offense, or both").

At his March 21, 2013 sentencing, Neely conceded that his previous convictions triggered the ACCA enhancement. The sentencing court agreed. Specifically, the sentencing court categorized delivering marijuana as a "serious drug offense." § 924(e)(1); *see also* § 924(e)(2)(A). And it characterized burglary, first-degree robbery, and attempted battery as "violent felon[ies]." § 924(e)(1); *see also* § 924(e)(2)(B). But in reaching this second conclusion, the sentencing court didn't specify whether it was relying on the ACCA's elements clause, *see* § 924(e)(2)(B)(i) (defining violent felony, in relevant part, as offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another"); the ACCA's enumerated-offenses clause, *see* § 924(e)(2)(B)(ii) (defining violent felony, in relevant part, as offense that "is burglary, arson, or extortion, [or] involves use of explosives"); or the ACCA's residual clause, *see* § 924(e)(2)(B)(ii) (defining violent felony, in relevant part, as offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another"). Instead, the sentencing court

2

simply pronounced that Neely was subject to the ACCA enhancement and sentenced him to "200 months and 5 days" in prison. R. vol. 2, 10.

Neely didn't appeal his sentence—an unsurprising choice in light of his concession that the ACCA enhancement applied. But just over two years later, the legal landscape changed when the Supreme Court struck down the ACCA's residual clause as unconstitutionally vague. *See Johnson v. United States*, 135 S. Ct. 2551, 2557 (2015) ("We are convinced that the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges. Increasing a defendant's sentence under the clause denies due process of law."). And less than a year after that, Neely invoked *Johnson* to attack his sentence in a timely § 2255 motion. *See* § 2255(f)(3) ("The [one-year] limitation period [for filing a § 2255 motion] shall run from . . . the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."); *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016) ("*Johnson* announced a substantive rule that has retroactive effect in cases on collateral review.").

In seeking *Johnson* relief, Neely didn't dispute that delivering marijuana was and is a "serious drug offense." § 924(e)(1); *see also* § 924(e)(2)(A). But he did argue that "after *Johnson*," his convictions for burglary, attempted battery, and first-degree robbery "no longer justify the ACCA sentencing enhancement" because—

3

according to Neely—"they could only have been [ACCA] predicates under the residual clause." R. vol. 1, 7.

The district court disagreed. It acknowledged that "*Johnson* eliminated the residual clause from the ACCA calculus for determining what constitutes a violent felony." *Id.* at 136. But it pointed out that *Johnson* left intact both the ACCA's elements clause and its enumerated-offenses clause. *See Johnson*, 135 S. Ct. at 2563 ("Today's decision does not call into question application of the [ACCA] to the four enumerated offenses, or the remainder of the [ACCA's] definition of a violent felony."). And the district court further determined that first-degree robbery, burglary, and attempted battery each constituted a violent felony under one of those still-valid clauses. Thus, the district court concluded that even "after *Johnson*," Neely had one conviction for a serious drug offense and three convictions for violent felonies—enough to trigger the ACCA enhancement "with even one extra [violent-felony] conviction to spare." R. vol. 1, 141; *see also* § 924(e)(1) (requiring only "three previous convictions . . . for a violent felony or a serious drug offense, or both"). Accordingly, the district court denied Neely's § 2255 motion. Neely appeals.

## Analysis

The district court denied Neely's § 2255 motion on November 13, 2017, and Neely filed his notice of appeal four days later. Since then, our approach to analyzing

4

*Johnson* claims has evolved considerably. Thus, we begin our discussion with a brief explanation of that approach.[1]

In determining whether a petitioner is entitled to *Johnson* relief, our analysis proceeds in two steps. First, we ask whether a *Johnson* error occurred. That is, we ask "whether the sentencing court relied on the residual clause in imposing the ACCA sentence." *United States v. Lewis*, 904 F.3d 867, 872 (10th Cir. 2018) (quoting *United States v. Wilfong*, 733 F. App'x 920, 926 (10th Cir. 2018) (unpublished)).

Sometimes the sentencing record will yield an obvious answer to this threshold question. For instance, the record might contain a "clear pronouncement" from the sentencing court that it relied on the residual clause to classify a particular offense as a violent felony. *Id.* at 871. But sometimes (as Neely concedes is the case here) the record contains no such "clear pronouncement." *Id.* Under those circumstances, resolving the *Johnson*-error question becomes more difficult. But we may nevertheless be able answer it by looking to "the 'relevant background legal environment at the time of sentencing.'" *Id.* (quoting *United States v. Snyder*, 871 F.3d 1122, 1129 (10th Cir. 2017), *cert. denied*, 138 S. Ct. 1696 (2018)). In particular,

_____

[1] Without the benefit of some of the more recent authorities we discuss in this section, it's understandable that neither the parties' arguments nor the district court's ruling track precisely with the applicable analytical framework as we describe it here. Nevertheless, we will affirm the district court's order denying Neely's § 2255 motion so long as the district court reached the correct result—even if it "relied upon a wrong ground or gave a wrong reason" in doing so. *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011) (quoting *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 88 (1943)).

if "there would have been little dispute at the time of [the petitioner's] sentencing" that a given offense satisfied the enumerated-offenses clause, then "there would have been no need for" the sentencing court to "rel[y] on the residual clause"—thus rendering it unlikely that it did so. *Snyder*, 871 F.3d at 1129–30. If, on the other hand, the sentencing court would have been unable to rely on the enumerated-offenses clause or the elements clause at the time of sentencing because doing so would have violated then-controlling law, we may instead deduce "that the sentencing court must have relied on the residual clause." *United States v. Driscoll*, 892 F.3d 1127, 1135 (10th Cir. 2018).

At this first stage of our two-step *Johnson* inquiry, a petitioner bears the burden of showing "by a preponderance of the evidence" that the sentencing court relied on the residual clause. *United States v. Washington*, 890 F.3d 891, 896 (10th Cir. 2018), *cert. denied*, No. 18-5594, 2019 WL 113224 (U.S. Jan. 7, 2019); *see also Driscoll*, 892 F.3d at 1135. In determining whether a petitioner has satisfied this burden, "we review the [district court's] factual determinations about the sentencing record for clear error and [its] legal conclusions about the relevant background legal environment de novo." *Driscoll*, 892 F.3d at 1132–33.

If a petitioner succeeds in demonstrating that the sentencing court more likely than not committed a *Johnson* error, then we turn to the second step in our analysis: we ask whether the sentencing court's error was harmless. *See Lewis*, 904 F.3d at 873. In making that determination, we ask whether "a sentencing judge, applying *current* law" would determine that the petitioner's previous convictions are for

6

offenses that constitute violent felonies "under one or both of the still-valid ACCA clauses." *Id.* at 873 (emphasis added). If so—i.e., "[i]f a movant would still receive an ACCA enhancement" under current law—then "the sentencing court's original reliance on the now-invalid residual clause was harmless" and the petitioner isn't entitled to *Johnson* relief. *Id.*

At this second stage of the analysis, the government bears the burden of demonstrating that any *Johnson* error was harmless. *See United States v. Degeare*, 884 F.3d 1241, 1247 (10th Cir. 2018). And to the extent a district court concludes the government has satisfied that burden, we review this legal conclusion de novo. *See United States v. Ridens*, 792 F.3d 1270, 1272 (10th Cir. 2015).

As it turns out, these general ground rules for resolving *Johnson* claims present some significant hurdles to Neely's specific request for relief. Like any other petitioner in his shoes, Neely needs only three qualifying convictions to trigger the ACCA's sentencing enhancement. *See* § 924(e)(1). But Neely is starting one pace back from the block: he doesn't dispute that the sentencing court correctly characterized his conviction for delivering marijuana as an ACCA predicate. Thus, Neely needs only two more qualifying convictions before we may affirm the district court's order denying his § 2255 motion. *See* § 924(e)(1), (2)(A). And the district court determined he has three. That is, in addition to his unchallenged conviction for delivering marijuana, the district court ruled that each of Neely's convictions for (1) burglary, (2) first-degree robbery, and (3) attempted battery constitutes an ACCA predicate under either the enumerated-offenses clause or the elements clause.

7

Accordingly, the district court not only determined that Neely has the requisite three convictions; it concluded that he has three qualifying convictions *and* "one extra [violent-felony] conviction to spare." App. vol. 1, 141; *see also* § 924(e)(1).

The district court's ruling leaves Neely with a narrow path to reversal. To prevail on appeal, he must first show by a preponderance of the evidence that the sentencing court relied on the residual clause to classify as violent felonies *at least* two of the three offenses the district court treated as ACCA predicates. If he fails to make this threshold showing—i.e., if it appears just as likely (or more so) that the sentencing court relied on the enumerated-offenses clause or the elements clause (rather than the residual clause) to classify any two of these three offenses as violent felonies—then Neely can't demonstrate that "the sentencing court relied on the residual clause in imposing the ACCA sentence." *Lewis*, 904 F.3d at 872 (quoting *Wilfong*, 733 F. App'x at 926). And in that case, our analysis comes to an end; we will affirm the district court's ruling without reaching the harmless-error question. *See id.* at 873 ("Petitioner . . . has not successfully established a *Johnson* error, meaning that our analysis never progresses beyond the initial, historical evaluation of the sentencing court's decision."). Further, even assuming Neely can make the threshold *Johnson*-error showing with respect to at least two of the three offenses, that doesn't necessarily mean we will reverse the district court's order. It merely means we will proceed to the second step of our *Johnson* analysis. *See id.* at 874. And at that step, we will affirm—even in the face of an established *Johnson* error— so long as the government can show the error was harmless. *See id.*

For the reasons discussed below, we conclude that Neely fails to successfully navigate this narrow path to relief. Specifically, he fails to show the sentencing court more likely than not relied on the residual clause to classify Tennessee burglary as a violent felony. And even assuming the sentencing court relied on the residual clause to classify Nevada attempted battery as a violent felony, we conclude that error was harmless. Thus, we need not and do not address whether the sentencing court committed *Johnson* error—harmless or otherwise—in classifying Neely's "extra . . . conviction" for first-degree robbery as a violent-felony conviction. R. vol. 1, 141; *see also* § 924(e)(1).

## I.    Neely's Tennessee Burglary Conviction

We begin our analysis with Neely's 1983 Tennessee conviction for third-degree burglary. More specifically, we begin by asking whether Neely can demonstrate by a preponderance of the evidence that the sentencing court relied on the residual clause to classify that offense as a violent felony. *See Lewis*, 904 F.3d at 872; *Driscoll*, 892 F.3d at 1135.

Neely concedes the sentencing court never "clear[ly] pronounce[d]" that it was relying on the residual clause to classify his burglary conviction as an ACCA predicate. *Lewis*, 904 F.3d at 871. But he nevertheless insists that "the background legal environment at the time of sentencing" indicates it did so. Aplt. Supp. Br. 3. The government disagrees. It alleges that at the time of Neely's 2013 sentencing, third-degree burglary clearly satisfied the enumerated-offenses clause, thus rendering

it unnecessary for the sentencing court to rely on the residual clause. *See Snyder*, 871 F.3d at 1130. For the reasons discussed below, we agree with the government.

For purposes of satisfying the ACCA's enumerated-offenses clause, burglary is "any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *United States v. Ramon Silva*, 608 F.3d 663, 665 (10th Cir. 2010) (quoting *Taylor v. United States*, 495 U.S. 575, 599 (1990)), *abrogated by Mathis v. United States*, 136 S. Ct. 2243 (2016). And at the time of Neely's offense, Tennessee defined third-degree burglary as "the breaking and entering into a business house, outhouse, or any other house of another, other than [a] dwelling house, with the intent to commit a felony." Tenn. Code Ann. § 39-3-404(a)(1) (1982) (repealed 1989).

Despite the apparent overlap between these two sets of elements, Neely asserts that Tennessee's definition of third-degree burglary is categorically broader than the generic definition of burglary because the former "includes the locational alternatives 'outhouse' and 'any other house.'"[2] Aplt. Br. 8 (quoting § 39-3-404(a)(1)); *cf. also Taylor*, 495 U.S. at 599 (noting that some states "define burglary more broadly" by "including places, such as automobiles and vending machines, other than buildings"); *Ramon Silva*, 608 F.3d at 665 ("In determining whether a defendant's prior

---

[2] We need not resolve whether Tennessee's inclusion of these locational alternatives renders its definition of third-degree burglary categorially broader than the generic definition of burglary. Even assuming Neely is correct on this point, he isn't entitled to relief for the reasons discussed in the text.

conviction meets this generic definition of burglary, we employ a categorical approach that 'look[s] only to the fact of conviction and the statutory definition of the prior offense.'" (alteration in original) (quoting *Taylor*, 495 U.S. at 602)). And Neely further asserts that under the Supreme Court's 2016 decision in *Mathis*, these locational alternatives are means rather than elements, thus rendering the modified categorical approach unavailable. "Under that approach, a sentencing court looks" beyond the language of the relevant state statute "to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of" and "then compare[s] that crime, as the categorical approach commands, with the relevant generic offense." *Mathis*, 136 S. Ct. at 2249; *see also id.* at 2256 (explaining that modified categorical approach isn't available if statutory alternatives are means rather than elements).

But as the government points out, the Supreme Court didn't decide *Mathis* until 2016. Thus, *Mathis* wasn't part of "the relevant background legal environment" at the time of Neely's 2013 sentencing. *Snyder*, 871 F.3d at 1129 ("[T]he relevant background legal environment is, so to speak, a 'snapshot' of what the controlling law was at the time of sentencing and does not take into account post-sentencing decisions that may have clarified or corrected pre-sentencing decisions."). And that means we cannot consider *Mathis* in evaluating whether, as a threshold matter, the sentencing court likely relied on the residual clause to classify Neely's third-degree burglary conviction as an ACCA predicate. *See Lewis*, 904 F.3d at 873 ("*Mathis* [is]

11

only applicable at the harmless[-]error stage of review, once the movant has established the existence of a *Johnson* error.").

Instead, we conclude that at the time of Neely's 2013 sentencing, it "would have been permissible for the [sentencing] court to" go beyond the text of the third-degree burglary statute and "examine the underlying charging documents and/or jury instructions to determine if" Neely "was charged only with burglary of buildings." *Lewis*, 904 F.3d at 871 (quoting *Snyder*, 871 F.3d at 1130); *cf. also Taylor*, 495 U.S. at 602 ("For example, in a [s]tate whose burglary statutes include entry of an automobile as well as a building, if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict, then the [g]overnment should be allowed to use the conviction for enhancement."). What's more, it appears that's precisely what the sentencing court did here. The PSR indicates that Neely was charged with and convicted of burglarizing "a business house." § 39-3-404(a)(1). Further, when the sentencing court listed the offenses that it believed "qualif[ied] as violent felonies" for ACCA purposes, it expressly referred to Neely's conviction for "burglary of a business." Aplee. Supp. R. vol. 1, 13.

Notably, Neely doesn't dispute that both the PSR and the charging document indicate he was convicted of burglarizing "a business house." § 39-3-404(a)(1). Nor does he dispute that burglary of "a business house" categorically corresponds with generic burglary. *Id.*; *see also Taylor*, 495 U.S. at 599. Accordingly, it appears "there would have been little dispute at the time of" Neely's 2013 sentencing that his

burglary conviction constituted an ACCA predicate under the enumerated-offenses clause, thus rendering it unnecessary for the sentencing court to "rel[y] on the residual clause." *Snyder*, 871 F.3d at 1129–30.

Nevertheless, Neely asks us to conclude otherwise. In doing so, he first points out that the Supreme Court heard argument in *Descamps v. United States*, 570 U.S. 254 (2013), on January 7, 2013—more than two months before his March 21, 2013 sentencing. And the Court went on to hold in *Descamps* that "sentencing courts may not apply the modified categorical approach when the crime of which the defendant was convicted has a single, indivisible set of elements." 570 U.S. at 258. That is, under *Descamps*, sentencing courts can't "look beyond the . . . elements" of an indivisible statute to the charging document or jury instructions "to determine which of a statute's alternative elements formed the basis of the defendant's prior conviction." *Id.* at 261–62. Thus, in light of this "changing legal landscape," Neely posits that "there was some question about the continued application of the modified categorical approach to burglary convictions" at the time of his sentencing. Aplt. Supp. Br. 4–5.

For three reasons, we reject this argument. First, regardless of when the Supreme Court heard argument in *Descamps*, the Court didn't issue its opinion in that case until June 20, 2013—almost three months after Neely's March 21, 2013 sentencing hearing. So although the rule announced in *Descamps* may have been looming on the horizon at that point, it wasn't yet part of the "legal landscape" for purposes of determining whether the sentencing court relied on the residual clause to

13

classify third-degree burglary as a violent felony. Aplt. Supp. Br. 4; *see also Snyder*, 871 F.3d at 1129 ("[T]he relevant background legal environment . . . *does not take into account post-sentencing decisions* that may have clarified or corrected pre-sentencing decisions." (emphasis added)). Accordingly, *Descamps* is, like *Mathis*, "only applicable at the harmless[-]error stage of review, once the movant has established the existence of a *Johnson* error." *Lewis*, 904 F.3d at 873.

Second, and relatedly, Neely's *Descamps* argument is really a *Mathis* argument in disguise. Neely is correct that *Descamps* precluded sentencing courts from applying the modified categorical approach to so-called "indivisible statutes." 570 U.S. at 260, 271. But in arguing that § 39-3-404(a)(1) is indivisible (such that the rule announced in *Descamps* rule would apply here) Neely relies on *Mathis*.[3] And for reasons we have already explained, such reliance is foreclosed at this step of our analysis. *See Lewis*, 904 F.3d at 873.

Third, to the extent Neely suggests the sentencing court might have correctly read the tea leaves of oral argument in *Descamps* to portend the result in *Mathis* and then opted to preemptively "rel[y] on the expansiveness of the residual clause rather

---

[3] Indeed, *Descamps* arguably intimated that burglary statutes containing locational alternatives were divisible. *Compare Descamps*, 570 U.S. at 257 ("If one alternative (say, a building) matches an element in the generic offense, but the other (say, an automobile) does not, the modified categorical approach permits sentencing courts to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction."), *with Mathis*, 136 S. Ct. at 2250, 2253, 2256 (holding that state burglary statute containing locational alternatives was indivisible, thus rendering modified categorical approach unavailable).

than" the enumerated-offenses clause, the sentencing record belies such speculation. Aplt. Supp. Br. 5. As we have already discussed, the sentencing court expressly acknowledged that Neely's conviction was for "burglary of a business," Aplee. Supp. R. vol. 1, 13—thus indicating the sentencing court (1) looked beyond the language of the third-degree burglary statute to the relevant documents; (2) deduced from those documents that that Neely was charged with and convicted of "burglary of a building"; and (3) categorized that offense as a violent felony under the enumerated-offenses clause, *Taylor*, 495 U.S. at 602; *see also* § 924(e)(2)(B)(ii).

Undeterred, Neely argues that one additional aspect of "the relevant background legal environment" indicates the sentencing court more likely than not relied on the residual clause to classify third-degree burglary as a violent felony. *Snyder*, 871 F.3d at 1124. He notes that at the time of sentencing, the Supreme Court had already held that "attempted burglary, as defined by Florida law" satisfied the residual clause. *James v. United States*, 550 U.S. 192, 195, 212 (2007), *overruled by Johnson*, 135 S. Ct. 2551. And "[i]f *attempted* burglaries involved a 'serious potential risk of physical injury,' as the Supreme Court held in *James*," Neely posits, then "it stands to reason that *completed* burglaries would also pose a similar risk, and thus would unquestionably qualify under the residual clause" at the time of sentencing. Aplt. Supp. Br. 6 (emphases added) (quoting *James*, 550 U.S. at 196)).

Although not without appeal, this argument also fails. The *James* Court only found it necessary to address whether attempted burglary satisfied the residual clause because that offense clearly did *not* satisfy the enumerated-offenses clause. *See*

15

*James*, 550 U.S. at 197 ("Attempted burglary is not arson or extortion. It does not involve the use of explosives. And it is not 'burglary' [under the enumerated-offenses clause] because it does not meet the definition of burglary . . . that this Court set forth in [*Taylor*]: 'an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime.'" (quoting *Taylor*, 495 U.S. at 598)). In other words, the residual clause was only at play in *James* because attempted burglary isn't completed generic burglary and therefore attempted burglary doesn't satisfy the enumerated-offenses clause.

Here, on the other hand, Neely's conviction is for *completed* burglary. And Neely doesn't dispute that, with a quick glance at either the PSR or the charging document, the sentencing court would have been able to discern that the completed burglary Neely was convicted of committing "meet[s] the definition of burglary" the Supreme Court "set forth in [*Taylor*]." *Id.*; *see also Snyder*, 871 F.3d at 1130. Thus, contrary to Neely's argument, it was the enumerated-offenses clause—and not the residual clause—that provided the sentencing court in this case with "the analytical path of least resistance." Aplt. Supp. Br. 5; *see also United States v. Robinson*, 720 F. App'x 946, 951 (10th Cir.) (unpublished) ("In contrast [to the conviction at issue in *James*], [petitioner's] conviction was for burglary, not attempted burglary, and therefore it was eligible for consideration under the enumerated-offenses clause. In these circumstances, *James* does not indicate that the sentencing court relied on the

residual clause rather than the enumerated-offenses clause in sentencing [petitioner].”), *cert. denied*, 139 S. Ct. 64 (2018).[4]

In short, both the record and “the relevant background legal environment” indicate the sentencing court relied on the enumerated-offenses clause to classify Neely’s third-degree burglary conviction as an ACCA predicate. *Snyder*, 871 F.3d at 1124. And because Neely therefore fails to show by a preponderance of the evidence that the sentencing court committed a *Johnson* error vis-à-vis this particular conviction, the district court was correct to treat it as a viable ACCA predicate for purposes of denying Neely’s § 2255 conviction. *See Lewis*, 904 F.3d at 871–72 (holding that petitioner failed to show that “sentencing court more likely than not relied on the residual clause in classifying his Kansas burglary” as an ACCA predicate where “charging documents” indicated that petitioner was convicted of burglarizing a building); *Washington*, 890 F.3d at 897–98, 897 n.6 (reaching same conclusion where charging document and PSR indicated defendant was convicted of burglarizing a building); *United States v. Murphy*, 887 F.3d 1064, 1068–69 (10th Cir.) (holding that “there would have been no need to rely on the residual clause” to classify petitioner’s burglary convictions as ACCA predicates where indictments

---

[4] Although *Robinson* is unpublished, we find its reasoning persuasive and adopt it here. *See United States v. Engles*, 779 F.3d 1161, 1162–63, 1162 n.1 (10th Cir. 2015) (“Although unpublished orders and opinions generally are not considered binding precedent . . . such an order or opinion may be relied on for the purpose of disposing of the issue presented if it has persuasive value with respect to a material issue in a case and would assist the court in its disposition.” (citing 10th Cir. R. 32.1)).

indicated that each conviction was for burglarizing a building), *cert. denied*, 139 S. Ct. 414 (2018); *Snyder*, 871 F.3d at 1129–30 (holding that petitioner failed to demonstrate sentencing court committed *Johnson* error in classifying his burglary conviction as ACCA predicate where PSR indicated that petitioner "was charged only with burglary of buildings").

Notably, in light of the district court's unchallenged finding that Neely's conviction for delivering marijuana constitutes an ACCA predicate, this means Neely has at least two of the three convictions necessary to uphold the sentencing enhancement. *See* § 924(e)(1) (requiring only "three previous convictions . . . for a violent felony or a serious drug offense, or both").

## II. Neely's Nevada Attempted Battery Conviction

Neely next asserts that in denying his § 2255 motion, the district court erred in relying on his 2007 Nevada conviction for attempting to commit battery resulting in substantial bodily harm. The government disagrees. It insists that the sentencing court likely relied on the elements clause to classify Neely's attempted-battery conviction as an ACCA predicate. Alternatively, even assuming the sentencing court relied on the residual clause (and thus committed *Johnson* error), the government argues that the sentencing court's error was harmless because Neely's attempted-battery conviction satisfies the elements clause under current law. *See Lewis*, 904 F.3d at 873.

For purposes of evaluating the parties' disagreement on this point, we opt to (1) assume without deciding that the sentencing court relied on the residual clause to

18

classify Neely's attempted-battery conviction as an ACCA predicate and (2) proceed directly to the harmless-error question. That is, we ask whether "a sentencing judge, applying current law" would determine that Neely's conviction satisfies "one or both of the still-valid ACCA clauses." *Id.* at 873. In answering that question, we begin with the language of the relevant state statutes.

Neely was convicted of attempted battery under three provisions of Nevada law: (1) Nev. Rev. Stat. Ann. § 200.481(1)(a) (2003), which defined battery as "any willful and unlawful use of force or violence upon the person of another"; (2) Nev. Rev. Stat. Ann. § 200.481(2)(b) (2003), which classified battery as a felony if "substantial bodily harm to the victim result[ed]"; and (3) Nev. Rev. Stat. Ann. § 193.330(1) (2003), which stated, "An act done with the intent to commit a crime, and tending but failing to accomplish it, is an attempt to commit that crime."

Critically, Neely doesn't dispute that under current law, the *completed* Nevada offense of battery resulting in substantial bodily harm satisfies the elements clause. More specifically, he doesn't dispute that under current law, the completed offense "has as an element the use . . . of physical force against the person of another." § 924(e)(2)(B)(i); *see also United States v. Castleman*, 572 U.S. 157, 169 (2014) (holding that for purposes of 18 U.S.C. § 922(g)(9)'s elements clause, "the knowing or intentional causation of bodily injury necessarily involves the use of physical force"); *United States v. Ontiveros*, 875 F.3d 533, 538 (10th Cir. 2017) (extending *Castleman* to § 924(e)(2)(B)(i)'s elements clause), *cert. denied*, 138 S. Ct. 2005 (2018). And as the government points out, when a completed crime has as an element

19

the *actual* use of physical force, it stands to reason that any attempt to commit that completed crime necessarily has as an element the *attempted* use of such physical force—thus satisfying the elements clause. *See* § 924(e)(2)(B)(i) (defining violent felony, in relevant part, as offense that "has as an element the . . . *attempted* use . . . of physical force against the person of another" (emphasis added)). Indeed, at least three of our sibling circuits have employed this very logic. *See Hill v. United States*, 877 F.3d 717, 719 (7th Cir. 2017), *cert. denied*, 139 S. Ct. 352 (2018); *United States v. Johnson*, 688 F. App'x 404, 405–06 (8th Cir. 2017) (unpublished); *cf. United States v. St. Hubert*, 909 F.3d 335, 351–52 (11th Cir. 2018). And this court has twice done the same, albeit in unpublished decisions. *See United States v. Rinker*, 746 F. App'x 769, 771–72 (10th Cir. 2018) (unpublished); *United States v. Dean*, 724 F. App'x 681, 682 (10th Cir. 2018) (unpublished).[5]

Despite the undeniable logic of this approach, Neely insists that two aspects of Nevada law place the offense of attempting to commit battery resulting in substantial bodily harm outside the scope of the elements clause—even if the completed offense falls within that clause's ambit. First, Neely asserts that attempting to commit battery resulting in substantial bodily harm doesn't satisfy the elements clause because Nevada's definition of attempt doesn't "meet the 'probable[-]desistance test.'" Aplt. Br. 22 (quoting Herbert Wechsler et. al., *The Treatment of Inchoate Crimes in the Model Penal Code of the American Law Institute: Attempt, Solicitation, and*

---

[5] We find persuasive the reasoning of these unpublished cases. *See* 10th Cir. R. 32.1; *Engles*, 779 F.3d at 1162–63, 1162 n.1.

20

*Conspiracy*, 61 Colum. L. Rev. 571, 589 (1961)). But as the government points out, Neely didn't raise this probable-desistance argument below. And he doesn't make a plain-error argument on appeal. Accordingly, we treat Neely's probable-desistance argument as waived and decline to consider it. *See United States v. Kearn*, 863 F.3d 1299, 1313 (10th Cir. 2017), *cert. denied*, 138 S. Ct. 2025 (2018).

Second, Neely insists that under Nevada law, attempting to commit battery resulting in substantial bodily harm doesn't satisfy the elements clause because (1) Nevada's definition of attempt "requires only an intent to commit the crime and . . . a direct but ineffectual act toward [its] commission," and (2) the requisite "direct but ineffectual act" need not itself "be forcible in nature." Aplt. Br. 18–19.

Unlike his probable-desistance argument, Neely made this argument below. But as the government points out, he didn't include it in his initial § 2255 motion. Instead, Neely advanced this argument for the first time in his reply to the government's response to his motion. What's more, the district court declined to address it. And once again, Neely fails to argue for plain error. Thus, the government asserts we should decline to consider this argument as well. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below."); *Kearn*, 863 F.3d at 1313; *United States v. Lee Vang Lor*, 706 F.3d 1252, 1256 (10th Cir. 2013).

In response, Neely doesn't dispute that he failed to preserve this argument in district court. *See Lee Vang Lor*, 706 F.3d at 1256. But he suggests we should nevertheless reach the argument and reverse on this basis because—according to

Neely—"proper resolution" of his argument "is beyond any doubt" and "injustice might otherwise result." Rep. Br. 17 (quoting *Wulff*, 428 U.S. at 121).

We don't disagree that we have discretion to consider unpreserved arguments like the one Neely advances here. But such arguments "may form a basis for reversal only if the appellant can satisfy the elements of the plain[-]error standard of review." *Richison*, 634 F.3d at 1130 (emphasis omitted). And again, Neely makes no attempt to show he can satisfy that test here. Thus, we treat his attempt argument as waived and decline to consider it. *See Kearn*, 863 F.3d at 1313; *Richison*, 634 F.3d at 1128 (expressly rejecting appellant's assertion that "we may forgo plain[-]error review entirely" so long as "correct resolution of" an unpreserved argument "is beyond a reasonable doubt and the failure to intervene would result in a miscarriage of justice").

In sum, the government persuasively argues that even assuming the sentencing court relied on the residual clause to classify Neely's attempted-battery conviction as an ACCA predicate, that error was harmless. And Neely has waived the only arguments he presents to the contrary. Accordingly, we decline to disturb the district court's determination that Neely's attempted-battery conviction remains a viable ACCA predicate post-*Johnson*. *See Lewis*, 904 F.3d at 873.

This means we will likewise leave undisturbed the district court's ultimate ruling that Neely isn't entitled to § 2255 relief. The district court based that ruling, in relevant part, on Neely's convictions for (1) delivering marijuana, (2) third-degree burglary, and (3) attempted battery. *See* § 924(e)(1) (requiring only "three previous

22

convictions . . . for a violent felony or a serious drug offense, or both"). Because we see no indication that the district court committed reversible error in relying on any of these three convictions, we affirm the district court's order denying Neely's § 2255 motion.

Entered for the Court

Nancy L. Moritz
Circuit Judge