**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 3, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

In re: DEVIN DAVID SHARP; AMY
BETH SHARP,

    Debtors.

------------------------------

AMY BETH SHARP,

    Appellant,

v.

NICK COX; GEORGIA FORSEE,

    Appellees.

No. 25-1268
(D.C. No. 1:24-CV-02873-CNS)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **PHILLIPS**, **EBEL**, and **McHUGH**, Circuit Judges.

_____

Defendant-Appellant Amy Beth Sharp appeals from the district court's

affirmance of the bankruptcy court's judgment in favor of two of her former

employees, Plaintiffs-Appellees Nick Cox and Georgia Forsee (collectively

"Plaintiffs"). The bankruptcy court determined that Ms. Sharp owed Plaintiffs a

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and
Tenth Circuit Rule 32.1.

nondischargeable debt for unpaid salaries under 11 U.S.C. § 523(a)(2)(A). On appeal, Ms. Sharp challenges the bankruptcy court's ruling based on an argument that she did not raise in the bankruptcy court proceedings. Because she did not raise this argument before the bankruptcy court and has not met her burden of establishing plain error on appeal, we affirm the district court's order affirming the bankruptcy court's judgment.

## I.    FACTUAL BACKGROUND[1]

In 2015, Ms. Sharp formed a company to transport and deliver cannabis and hemp products from manufacturers to dispensaries throughout Colorado. She was the sole owner of this company, Equal Exchange FTC, LLC d/b/a Sharp Solutions Courier ("the Company").

Ms. Sharp hired Plaintiffs to work for the Company in the spring of 2018. Plaintiffs worked as delivery drivers and also performed marketing and administrative work for the Company. They worked closely with Ms. Sharp, who directed their daily activities. When they were hired, Ms. Sharp agreed to pay them each $15 per hour for their delivery work. Beginning in August 2018, she also agreed to pay them each a monthly salary of $3,500 for their administrative and marketing work. Ms. Sharp promised Plaintiffs that they would receive their accrued salaries and back pay when the Company received investment funding.

---

[1] Because neither party challenges the bankruptcy court's factual findings on appeal, "we draw the following description of the events underlying this suit from those findings." *In re Joelson*, 427 F.3d 700, 703 (10th Cir. 2005), *abrogated on other grounds by Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709 (2018).

Plaintiffs both worked for the Company for approximately two years. Over the course of those two years, Plaintiffs received only a small portion of the hourly wages they were owed for their delivery work, and they never received any payment of the promised monthly salaries. They continued to work for Ms. Sharp without pay based on her repeated representations to them—made both verbally and in writing—that she was speaking to investors, that she had "landed" various investments, and that they only needed to hold on a little longer before everyone would get their paychecks. App. Vol. II at 50.

Ms. Sharp "continued to make these representations despite the fact investments were not being made into the Company." App. Vol. I at 145. And "as often as [she] represented to Plaintiffs investments were being made in the Company, [she] omitted the material fact the investments never happened." *Id.* at 146. In August 2019, however, Plaintiffs "became aware the Company was struggling to attract investments." *Id.* at 149.

At one point, possibly in August 2019, Ms. Sharp received two checks of $6,000 each from an investor. She "testified these checks were not investments in the Company, but instead personal loans given to [her] personally." *Id.* at 134. Although this money was "used to pay wages owed to the Company's drivers," it "was not used to pay any wages owed to [Plaintiffs]." *Id.* at 134, 147.

Around March 2020, Ms. Sharp fired Ms. Forsee "for 'asking too many hard questions' about the Company, including questions about the Company's finances

3

and questions about not being paid by the Company." *Id.* at 134. Mr. Cox left the Company about a month later.

"Later, after Plaintiffs left the Company, [Ms.] Sharp was successful in attracting investment dollars for the Company." *Id.* at 135. She received a $75,000 investment from one investor and a $420,000 investment from a second investor. Although these investments were purportedly "start-up" money for a new business, Sharp Holdco, which Ms. Sharp created to deliver cannabis in a "new business-to-consumer business model," Ms. Sharp "filtered" funds from Sharp Holdco into the Company and used it to pay the Company's operating expenses. *Id.* Moreover, the $75,000 investment was expressly recorded on the Company's ledger.

Despite receiving almost half a million dollars in investment funds, however, Ms. Sharp did not pay Plaintiffs any portion of their unpaid salaries or past wages. She reasoned that "she didn't see any obligation to pay Plaintiffs back once she got investment money because they weren't involved in the Company any longer." *Id.*

## II.    PROCEDURAL HISTORY

Ms. Sharp and her husband filed a Chapter 7 bankruptcy petition, and Plaintiffs filed an adversary complaint against Ms. Sharp[2] in the bankruptcy court, contending that Ms. Sharp owed them a debt for their unpaid wages and salaries and

---

[2] Ms. Sharp does not contest the bankruptcy court's conclusion that she "would be liable for the Company's debt under § 523(a)(2)(A)" if Plaintiffs succeeded in showing that "it was the false representations, false pretenses, or actual fraud by [Ms.] Sharp that caused the Company to incur a debt to Plaintiffs." App. Vol. I at 139.

that this debt was nondischargeable under 11 U.S.C. § 523(a)(2)(A). Section 523(a)(2)(A) provides in pertinent part that a debtor cannot discharge a debt in bankruptcy "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by [] false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A).

In her pretrial brief, Ms. Sharp argued that Plaintiffs had failed to establish the existence of "false pretenses, a false representation, or actual fraud." *Id.* Ms. Sharp's pretrial brief did not raise any other arguments regarding nondischargeability under § 523(a)(2)(A). Likewise, when Ms. Sharp made an oral motion at trial for judgment as a matter of law, her only argument on nondischargeability was that Plaintiffs had failed to present evidence from which the court could find false pretenses, false representations, or actual fraud. She did not otherwise challenge nondischargeability under § 523(a)(2)(A).

Following the trial, the bankruptcy court issued a twenty-six page opinion carefully analyzing the arguments and evidence presented by the parties. In rejecting Ms. Sharp's argument that Plaintiffs had not presented sufficient evidence to support a finding of "false pretenses, a false representation, or actual fraud," *id.*, the bankruptcy court found that Ms. Sharp's "repeated representations of investment dollars and promises of payment created false impressions in Plaintiffs' minds investments were coming into the Company and they would finally be paid for all their work." App. Vol. I at 146. The court found that these repeated representations,

5

in combination with Ms. Sharp's failure to inform Plaintiffs that the Company was not in fact receiving investments, were sufficient to establish that she incurred a debt to Plaintiffs through "false pretenses." *Id.* at 146–47. The court further found that Ms. Sharp acted with intent to deceive and that Plaintiffs relied on the false pretenses she created. However, the bankruptcy court found that Plaintiffs' reliance was only justifiable up until they learned in August 2019 that the Company was struggling to attract investors.

After concluding that any debt thus incurred before August 2019 would be nondischargeable under § 523(a)(2)(A), the bankruptcy court turned to the question of whether Plaintiffs were "owed any wages and/or salary for their work for the Company." *Id.* at 150. On this point, the court held that Plaintiffs had established a valid claim of breach of contract under Colorado law. In so holding, the bankruptcy court specifically addressed and rejected Ms. Sharp's argument that she did not owe wages or salary to Plaintiffs because their receipt of back pay was contingent upon the Company receiving investment funds. The court reasoned: "[T]he condition of payment of salaries and back wages upon receipt of investments [did not] prevent[] an agreement to arise between Plaintiffs and the Company. Nor does the fact investments were not received until after Plaintiffs left the Company excuse the Company's performance under its compensation agreement with Plaintiffs." *Id.* at 152.

However, the bankruptcy court held that Plaintiffs had not presented sufficient evidence of the hours they worked as delivery drivers to establish damages for that

aspect of their claim. Based on that conclusion and the court's finding that Plaintiffs' reliance on Ms. Sharp's representations was no longer justifiable after August 2019, the court limited their damages to their unpaid monthly salaries between August 2018 and August 2019, which amounted to $42,000 apiece. The bankruptcy court therefore entered final judgment in favor of Plaintiffs and against Ms. Sharp in the principal amount of $84,000, holding that this judgment was "non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A)." *Id.* at 155.

Ms. Sharp filed a notice of appeal and elected to have her appeal heard by the district court rather than the Bankruptcy Appellate Panel. *See* 28 U.S.C. § 158(a)(1) and (c)(1)(A). In her appeal to the district court, Ms. Sharp argued for the first time that her debts to Plaintiffs were dischargeable because the representations the bankruptcy court relied on fell under § 523(a)(2)(A)'s exception for "a statement respecting the debtor's or an insider's financial condition." *Id.* at 166 (quoting § 523(a)(2)(A)).

The district court held that this argument had been forfeited based on "the clear failure of Ms. Sharp to raise her § 523 challenge" in the bankruptcy court, combined with her "cursory" reply to Plaintiffs' waiver argument on appeal. *Id.* at 165. "Nonetheless, for the sake of completeness, the [district c]ourt exercise[d] its discretion" to consider—and reject—this newly raised argument on the merits. *Id.* The district court therefore affirmed the bankruptcy court's judgment.

Ms. Sharp then filed a timely appeal to this court. Exercising jurisdiction under 28 U.S.C. § 158(d)(1), we affirm.

## III.    DISCUSSION

Ms. Sharp raises a single issue in the argument section of her opening brief,[3]

contending that the bankruptcy court erred by failing to find her debt dischargeable

based on § 523(a)(2)(A)'s exception for "a statement respecting the debtor's or an

insider's financial condition." 11 U.S.C. § 523(a)(2)(A). As detailed above, however,

Ms. Sharp never raised this argument before the bankruptcy court. Rather, in the

bankruptcy court proceedings, Ms. Sharp argued only that Plaintiffs' evidence failed

---

[3] In the "Statement of the Case" section of her opening brief, Ms. Sharp makes the perfunctory assertion that "the bankruptcy court did not fully undertake the two-part analysis required to resolve 11 U.S.C. [§] 523(a) dischargeability claims." Appellant's Br. at 7. Ms. Sharp's opening brief does not otherwise discuss the two-part analysis, but her reply brief cursorily argues that the bankruptcy court failed to conduct the two-part analysis in the correct order and "made no clear findings about whether [Plaintiffs] were entitled to compensation after leaving the [C]ompany but before investments were received." Reply Br. at 6.

As we have previously observed, "[a] mere suggestion that the [trial] court erred—made solely in the 'Statement of the Case' section of an appellant's brief and not subsequently developed in the 'Argument' section—is insufficient to adequately brief an issue for consideration on appeal." *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 546 n.8 (10th Cir. 2016). And we generally will not review an appellate argument that was not adequately raised in the appellant's opening brief, even if the appellant later develops this issue in her reply brief. *See Butler v. Daimler Trucks N. Am., LLC*, 74 F.4th 1131, 1145–46 (10th Cir. 2023).

Moreover, Ms. Sharp's arguments regarding the two-part analysis are unpersuasive on the merits. The record shows that the bankruptcy court thoroughly evaluated both parts of the two-part nondischargeability analysis, and Ms. Sharp provides no authority for her assertion that a bankruptcy court commits reversible error by conducting this analysis in the reverse order from her preferred approach. The record also reveals that the bankruptcy court devoted a full paragraph to considering Ms. Sharp's argument that she did not owe Plaintiffs a debt because their salaries were contingent on the receipt of investments and they left the Company before it received any investments. Accordingly, even if we were to consider Ms. Sharp's forfeited arguments regarding the two-step analysis, she has not shown that the bankruptcy court erred in this analysis.

to satisfy the elements required to establish actual fraud, false pretenses, or a false representation. She never even alluded to the "financial condition" exception, much less claimed that this exception made her debt to Plaintiffs dischargeable under § 523(a)(2)(A). Ms. Sharp thus forfeited this argument by failing to raise it in the bankruptcy court. *See March v. IRS*, 335 F.3d 1186, 1189 (10th Cir. 2003); *see also U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*, 582 F.3d 1131, 1142 (10th Cir. 2009) ("An issue is not preserved for appeal unless a party alerts the [trial] court to the issue and seeks a ruling. A party does not preserve an issue merely by advancing a related theory before the [trial] court . . . ." (internal quotation marks and citation omitted)).

Nevertheless, Ms. Sharp asks us to review this argument de novo for three reasons: (1) "[t]he bankruptcy court's findings necessarily involved consideration of the nature of Ms. Sharp's statements regarding investments and company finances, which inherently implicated § 523(a)(2)(A)"; (2) the district court considered this argument on the merits in her initial appeal; and (3) her argument regarding the § 523(a)(2)(A) exception raises a matter of "pure statutory interpretation which may be resolved on the existing record without any additional factual development." Reply Br. at 2.

Ms. Sharp's first preservation argument was raised for the first time in her reply brief and is unsupported by any legal authority. "Such a belated and perfunctory effort is insufficient" to trigger this court's review of an unpreserved

argument. *Butler v. Daimler Trucks N. Am., LLC*, 74 F.4th 1131, 1143 (10th Cir. 2023).

Moreover, the fact that Ms. Sharp raised, and the bankruptcy court considered, arguments regarding other portions of § 523(a)(2)(A) does not mean that Ms. Sharp preserved her current argument that her debts to Plaintiffs are dischargeable under the statute's "financial condition" exception. "To avoid forfeiture, a legal theory must have been actually articulated in [the trial] court, rather than merely insinuated." *Id.* at 1142–43 (internal quotation marks omitted); *see also March*, 335 F.3d at 1189 (indicating that our general waiver and forfeiture rules apply to legal theories that an appellant fails to raise in the bankruptcy court); *In re Talbot*, 124 F.3d 1201, 1205 (10th Cir. 1997) (acknowledging in a bankruptcy appeal the "general rule in the Tenth Circuit . . . that the court will not consider an issue raised for the first time on appeal," while holding that a "claim of sovereign immunity presents an exception to the general rule"). "And we have consistently rejected the argument that raising a related theory below is sufficient to preserve an issue for appeal." *Butler*, 74 F.4th at 1143 (internal quotation marks omitted).

Our decision in *In re Robinson*, 987 F.2d 665 (10th Cir. 1993) (per curiam), illustrates the application of this principle in the bankruptcy context. There, a creditor filed a written objection to the debtor's proposed Chapter 13 plan, "arguing, among other things, that the plan was not proposed in good faith." *Id.* at 666–67. She argued that the bankruptcy court should find bad faith in part because, according to the creditor, the debtor filed under Chapter 13 instead of Chapter 7 to avoid a finding of

nondischargeability under Chapter 7 "pursuant to 11 U.S.C. § 523[(a)](4) and (6)." *Id.* at 667. However, the creditor "offered no argument explaining how her claim against debtor would result in a nondischargeable debt under § 523(a)(4), (6)." *Id.* The bankruptcy court concluded the plan was filed in good faith without specifically considering whether the debt would have been nondischargeable under § 523(a)(6) if the debtor had filed under Chapter 7.[4] *Id.*

On appeal, the district court reversed the bankruptcy court's judgment based in part on the conclusion that the debt would be nondischargeable under Chapter 7 pursuant to § 523(a)(6), which makes a debt nondischargeable if it arises from a willful and malicious injury by the debtor. *Id.* The debtor then appealed the district court's decision to this court, arguing that the district court "erred in considering whether debtor's debt arose from a willful and malicious injury because that issue was not raised in the bankruptcy court." *Id.* at 666.

We agreed with the debtor. *Id.* at 668–69. We held that "the issue of whether the debt was nondischargeable under § 523(a)(6) was not properly raised to the bankruptcy court" because the debtor "cited to the relevant subsection in her written motion, but . . . did so without any elaboration," and did not "explain that the evidence was relevant to whether debtor inflicted a willful and malicious injury." *Id.* We reasoned that the creditor "cannot complain on appeal that the bankruptcy judge

---

[4] Our opinion in *In re Robinson* does not indicate whether the bankruptcy court specifically considered whether the debt would have been nondischargeable under § 523(a)(4). *See* 987 F.2d 665, 667 (10th Cir. 1993) (per curiam).

refused to hear her evidence on this issue" when she "failed to sufficiently advance her argument to the bankruptcy court." *Id.* at 669. And we held that because the district court was acting "as a reviewing court," it "erred in making the factual determination that the debt arose from a willful and malicious injury when the bankruptcy court made no factual findings on this issue." *Id.* We therefore held that the district court erred in reversing the bankruptcy court's judgment based on a fact-based argument that had been forfeited in the bankruptcy court. *Id.*

As we have explained, "[o]ur adversarial system endows the parties with the opportunity—and duty—to craft their own legal theories for relief in the [trial] court." *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011). "It is the significant but limited job of our appellate system to correct errors made by the [trial] court in assessing the legal theories presented to it, not to serve as a second-shot forum where secondary, back-up theories may be mounted for the first time." *Id.* (internal quotation marks and ellipses omitted); *see also In re Robinson*, 987 F.2d at 668–69 (explaining that the same limitations apply to the district court's review on appeal from a bankruptcy court judgment). Allowing appellants to obtain full appellate review of "newly raised legal theories" would significantly "undermine this adversarial and appellate order." *Richison*, 634 F.3d at 1130. "It would force the judicial system to permit costly 'do-overs' in the [trial] court anytime a party can conceive a new winning argument on appeal—even when the [trial] court answered perfectly every question of law the parties bothered to put before it." *Id.*

12

Here, the bankruptcy court thoughtfully considered and persuasively answered "every question of law the parties bothered to put before it." *See id.* Ms. Sharp's perfunctory argument that we should nevertheless consider her new legal theory de novo because it was "inherently implicated" by the bankruptcy court's decision, Reply Br. at 2, fails to "justify undoing the work of that . . . court on the force of an argument [she] didn't present the first time around," *Richison*, 634 F.3d at 1130.

Ms. Sharp additionally contends that we should consider the "financial condition" exception de novo on appeal because the district court chose to review this issue on the merits without applying the plain error standard. Again, however, Ms. Sharp cites no legal authority for this perfunctory preservation argument. And regardless of what the district court did, we have repeatedly explained that this court, in the interests of judicial economy and fairness, will generally review an argument for reversal raised for the first time on appeal "only if the appellant argues for plain error and explains why the elements of plain error have been satisfied." *Butler*, 74 F.4th at 1143; *see also In re Paul*, 534 F.3d 1303, 1310 (10th Cir. 2008) ("Where a district court acts in its capacity as a bankruptcy appellate court, we review the bankruptcy court's decision independently. . . . We do not defer to the district court's intermediate appellate analysis . . . ." (quotation marks omitted)); *In re Robinson*, 987 F.2d at 668–70 (holding that the district court erred in reversing the bankruptcy court's judgment based on a fact-based argument that was forfeited because it was not adequately raised before the bankruptcy court). Ms. Sharp presents no persuasive reason why we should deviate from this general rule here.

13

Finally, Ms. Sharp argues that we should consider her "financial condition" argument de novo, despite her failure to raise it in the bankruptcy court, because it presents an issue of "pure statutory interpretation which may be resolved on the existing record without any additional factual development." Reply Br. at 2. The parties' briefing suggests, however, that the resolution of this argument may require a fact-intensive inquiry into the exact content and nature of Ms. Sharp's representations. Indeed, on the same page of her reply brief in which she describes her argument as a matter of "pure statutory interpretation," Ms. Sharp faults Plaintiffs for failing to "address any of the specific financial statements attributed to Ms. Sharp and whether they are related to financial condition." *Id.* And Ms. Sharp never responds to Plaintiffs' argument that, if Ms. Sharp had raised her "financial condition" argument before the bankruptcy court, Plaintiffs could have developed the factual record relevant to that contention.

Moreover, even if we were to accept Ms. Sharp's assertion that her "financial condition" argument presents an issue of pure statutory interpretation, this does not mean that we would review this issue de novo. Fifteen years ago, the appellant in *Richison* raised a very similar argument, asking this court to review a forfeited issue de novo on appeal "because his new theory [was] 'purely legal' and d[id] not require any additional fact-finding." 634 F.3d at 1128. But we held that this request "overlook[ed] our controlling precedent." *Id.* In the context of unpreserved arguments, "no case in this circuit has held that we may reverse based on 'purely legal' arguments in the absence of plain error." *Id.* at 1129. Therefore, because the

14

appellant in *Richison* had neither raised his new legal theory in the trial court nor argued for plain error review on appeal, he had waived appellate review of this issue, regardless of his contention that it was "purely legal" in nature. *Id.* at 1129–31.

Ms. Sharp cites to no authority calling this controlling precedent into question, nor does she cite a single case reaching the contrary conclusion. We therefore review Ms. Sharp's new legal theory regarding the "financial condition" exception to § 523(a)(2)(A) only for plain error.

"To show plain error, a party must establish the presence of (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 1128. Assuming without deciding that Ms. Sharp could satisfy the first two prongs of this standard, we conclude that she has not met her burden of establishing the third or fourth prongs of plain error review.

"In order to satisfy the third prong of plain error review, that is, establish that the error affects h[er] substantial rights, [Ms. Sharp] bears the burden of showing 'a reasonable probability that, but for the error claimed, the result of the proceeding would have been different.'" *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1124 (10th Cir. 2005) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004) (alterations omitted)). On appeal, Ms. Sharp does not dispute the bankruptcy court's finding that she incurred a debt to Plaintiffs through "false pretenses, a false representation, or actual fraud," but she contends that this debt was nevertheless dischargeable under § 523(a)(2)(A) because the false pretenses relied on by Plaintiffs

were all based on statements "respecting [her] financial condition." 11 U.S.C. § 523(a)(2)(A). She therefore suggests that her substantial rights were violated because, had the bankruptcy court correctly applied the "financial condition" exception to § 523(a)(2)(A), her debts to Plaintiffs would have been dischargeable.

As Ms. Sharp cursorily acknowledges, however, a neighboring subsection of this statute, § 523(a)(2)(B), provides for the nondischargeability of debts incurred through a statement "respecting the debtor's or an insider's financial condition" so long as this statement is "materially false" and made in writing. 11 U.S.C. § 523(a)(2)(B). And Ms. Sharp provides no explanation as to why, if the bankruptcy court had agreed with her appellate argument that the false statements at issue in this case—most of which were made in writing—constituted statements "respecting [her] financial condition," § 523(a)(2)(A), the bankruptcy court could not have applied § 523(a)(2)(B) to find her debts nondischargeable on this alternative basis. Ms. Sharp has thus failed to meet her burden of "explain[ing] why no other grounds can support affirmance of the [bankruptcy] court's decision," *Richison*, 634 F.3d at 1130, and we therefore conclude that she has not satisfied the third prong of plain error review.

Ms. Sharp's "financial condition" argument additionally fails to satisfy the fourth prong of plain error review. This prong requires the appellant to show that the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Richison*, 634 F.3d at 1128. Ms. Sharp fails to persuade us that the "fairness, integrity, or public reputation of judicial proceedings," *id.*, will be seriously harmed if she is not allowed to discharge her debts of promised salaries

16

owed to two employees whom she deceived into working for her without pay for two years. Indeed, we have explained that appellants in civil cases will almost never be able to satisfy this standard, which generally applies only in cases where "physical liberty is . . . at stake." *Butler*, 74 F.4th at 1144; *see also Somerlott v. Cherokee Nation Distribs., Inc.*, 686 F.3d 1144, 1151 (10th Cir. 2012) ("The burden of establishing plain error lies with the appellant. In civil cases, this burden is extraordinary and nearly insurmountable." (internal citations, quotation marks, ellipses, and brackets omitted)). Ms. Sharp thus falls far short of satisfying the fourth prong of plain error review. And she therefore has shown no valid basis for reversing the bankruptcy court's judgment.

## IV.　　CONCLUSION

We AFFIRM the district court's order affirming the bankruptcy court's judgment in favor of Plaintiffs.

Entered for the Court

Carolyn B. McHugh
Circuit Judge